## COURTNEY v. GEORGER.

### (District Court, W. D. New York. March 5, 1915.)

BANKRUPTCY ⊚=145—STOCKHOLDER'S LIABILITY—ENFORCEMENT.

Under Rev. Laws Minn. 1905, § 2878, providing that, save as otherwise specially limited or provided, no corporation shall issue any stock for a less amount to be actually paid in than the par value of those first issued, as construed by the Supreme Court of Minnesota, though a person purchasing stock from a corporation for less than par is liable to creditors because of his participation in the commission of a fraud on the creditors, there is no implied promise on his part, as between him and the corporation, to pay any greater or different sum, and, there being no liability to the corporation, the corporation's trustee in bankruptcy cannot sue to enforce the stockholder's liability.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 205, 230–232, 234; Dec. Dig. ⊚=145.]

In Equity. Bill by Joseph H. Courtney, as trustee in bankruptcy of the Huron Iron Mining Company, against Eugene A. Georger. Complaint dismissed.

Morey, Bosley & Morey, of Buffalo, N. Y. (Thompson, Hine & Flory, of Cleveland, Ohio, of counsel), for plaintiff.

Strebel, Corey, Tubbs & Beals, of Buffalo, N. Y., for defendant.

HAZEL, District Judge. The plaintiff, as trustee of the Huron Iron Mining Company, a bankrupt, incorporated under the laws of Minnesota for the purpose of engaging in mining and marketing iron ore and other minerals, has filed this bill, under section 70a (6) of

the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1913, § 9654]), to recover an alleged asset of the bankrupt estate. The evidence shows that in the year 1906 the defendant, who was a subscriber to the capital stock originally issued by said company, bought 1,500 additional shares, which were issued to him as full-paid and nonassessable, paying therefor the sum of $10 per share. The claim of the plaintiff is that the stock so sold was of the par value of $100 per share, and that on delivery there was an implied agreement on the part of the defendant to pay such amount therefor, regardless of the previous agreement on $10 as the purchase price; that amount being merely on account of his subscription. Since such sale of stock the corporation has been adjudged bankrupt, and the trustee, by order of the bankruptcy court, has levied an assessment of $3 on each of the 1,500 shares, to be applied by him on the payment of debts and liabilities of the bankrupt company.

The claims of the plaintiff, however, are not thought substantiated. The corporation, under its by-laws, had the right to issue stock as fully paid and nonassessable, in return for money, property, or services rendered the company. By resolution adopted by the board of directors, for the express purpose of securing the necessary funds to operate and develop the properties of the company, certificates of unissued stock were issued to subscribers at $10 per share; and the defendant, being a subscriber, secured the said 1,500 shares at that price.

The question presented for decision is whether the trustee in bankruptcy can recover the difference between the nominal value of the stock and the price at which it was actually sold to the defendant. The answer must be found either in the statutes of Minnesota, the state wherein the bankrupt was incorporated and of which it was a citizen, or in the decisions of the highest court of the state of Minnesota interpreting and construing such statute.

Section 2878, R. L. 1905, of the state of Minnesota in so far as material, reads as follows:

"Save as otherwise specially limited or provided, no corporation shall issue any share of stock for a less amount to be actually paid in than the par value of those first issued."

Does this provision nullify the agreement, for such it was, between the corporation and the defendant as to the price of the 1,500 shares of stock? And are such shares liable to assessment by the trustee in bankruptcy as unpaid stock? The agreement under which the stock was sold by the corporation was not unlawful, as between the corporation and the defendant, even though it may have constituted a fraud against creditors extending credit to the corporation on a fictitious or colorable capitalization.

This precise question of the liability to creditors of the corporation of shareholders purchasing or securing their stock at less than par, or for an inadequate consideration, was considered by the Supreme Court of Minnesota in Hospes v. Northwestern Mfg. & Car Co., 48 Minn. 197, 50 N. W. 1121, 15 L. R. A. 470, 31 Am. St. Rep. 637. It was there substantially held, as I read the case, that the sale of

stock at less than par, paying dividends out of the capital, or issuing shares of stock gratuitously, or for overvalued property, or for services performed for the corporation, were illegal and fraudulent dispositions of the corporate property as against creditors giving credit to the corporation in the belief that it possessed the represented capital, and that such creditors had a right to compel such stockholders severally to pay the face value of such stock in order that the debts and liabilities subsequently incurred by the corporation might be paid. In deciding the case the court said:

"The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it, and sell and dispose of it, the same as a natural person. It is a trustee for its creditors in the same sense and to the same extent as a natural person, but no further."

And it was further held that, when the corporation could not recover on the ground of contract, neither could the creditors; that if any rights accrued because of the issue of full-paid stock, when in fact the par value had not been paid, such rights arose from the fact that the stockholders, in accepting delivery under such conditions, participated in the commission of a fraud on the creditors, becoming such after the fraudulent sale. So, in this case, the agreement between the corporation and the defendant, to the effect that a specified number of shares were to be purchased by defendant at a specified price and according to the state law, was complete, and there was no implied promise to pay a greater or different sum as between the parties immediately interested. The creditors whose debts were incurred after the sale of such stock, under the principle announced in the Hospes Case, have greater rights than the corporation; such rights being based on the wrongful acts which tended to mislead them as to the amount of the paid-up capital and induced them to give credit. If the representation was false, as said by the court, it was a fraud upon the creditors, "and, in case the corporation becomes insolvent, the law, upon the plainest principles of common justice, says to the delinquent stockholder, 'Make that representation good by paying for your stock.'" This doctrine of independent liability to the creditor was subsequently approved in Randall Printing Co. v. Sanitas Mineral Water Co., 120 Minn. 268, 139 N. W. 606, 43 L. R. A. (N. S.) 706, and to this interpretation of the Minnesota statute by the Supreme Court of Minnesota this court is constrained to conform.

The question then is whether the plaintiff, as trustee in bankruptcy, has a right to maintain this suit on behalf of the corporation. In the recent case of Babbitt v. Read (D. C.) 215 Fed. 395, decided by Judge Mayer, it was contended, as here, that the trustee could not maintain such an action; that such right of action inured to the creditor, who had given credit to the corporation in the belief that the capital stock had been fully paid. The case arose under the statute law of the state of Missouri, which substantially prohibits corporations from issuing stock save for money paid, labor done, or property actually received; and after examining the adjudications of the state of Missouri relating to the subject, Judge Mayer, in an exhaustive opinion,

stated that the stockholders who had not fully paid for their stock were liable to the corporation on the principle that the amount unpaid was an asset of the corporation.

Applying the Minnesota law, however, to the case at bar, the agreement to purchase stock at less than par was not unlawful as between the defendant and the corporation, and there was no implied promise on the part of the former to pay for the stock any other or different price than $10 per share. Hence, in my opinion, the trustee cannot maintain this action for and on account of the general creditors of the corporation. Whatever rights they may have are personal rights peculiar to themselves.

In Re Jassoy, 178 Fed. 515, 101 C. C. A. 641, it was held by Judge Lacombe that under the Stock Corporation Law of this state, which substantially provides that holders of stock in a corporation for which par value has not been paid shall be personally liable to certain classes of creditors to the extent of the balance due on their stock, no claim or right of action is given to the corporation against such stockholder, and furthermore that under such circumstances no right of action inures to the trustee in bankruptcy of the corporation on behalf of its general creditors to compel stockholders to make payment equal to the par value of the stock. The language of the Minnesota statute is somewhat different from that of the New York statute; but, considering the interpretation given it by the Minnesota courts, I am constrained to hold that, as there was no liability of the defendant to the corporation, the trustee cannot maintain this action.

In accordance with the foregoing views, it follows that the complaint should be dismissed, with costs.