## COURTNEY v. GEORGER.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

### No. 95.

1. CORPORATIONS ☞175—LIABILITY OF STOCKHOLDERS—UNPAID SUBSCRIPTIONS.

An agreement by a corporation that no more than $10 need be paid for stock of the par value of $100, and that on the payment of that amount the stock was to be nonassessable, was binding on the corporation, whether the stockholder subscribed for the stock or purchased it from the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 654–656; Dec. Dig. ☞175.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ⊙⇒145—LIABILITY OF STOCKHOLDERS—UNPAID SUBSCRIP-
TIONS.
    Gen. St. Minn. 1913, § 6193, provides that, save as otherwise specially
limited or provided, no corporation shall issue any share of stock for a
less amount to be actually paid in than the par value of those first is-
sued. Defendant purchased stock in a Minnesota corporation of the par
value of $100 from the corporation under an agreement that upon pay-
ment of $10 a share, the stock would be fully paid up and nonassessable,
and this amount was paid. *Held* that, under such statute as construed
by the Minnesota Supreme Court, a trustee in bankruptcy could not recov-
er from defendant the unpaid balance of the par value.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 205, 230–
232, 234; Dec. Dig. ⊙⇒145.]

In Error to the District Court of the United States for the Western
District of New York.

The Huron Iron Mining Company is a corporation organized and
existing under the laws of the state of Minnesota and is a citizen of
that state. It has its principal place of business in the Western district
of Michigan. The defendant is a citizen of the state of New York and
resides in the Western district.

The Huron Iron Mining Company was organized on August 24, 1906, and
carried on its operations until about October 20, 1913, when it became unable
to meet its obligations as they became due. On December 19, 1913, it filed a
voluntary petition in bankruptcy in the District Court of the United States for
the Western District of Michigan, Northern Division. On December 20, 1913,
it was duly adjudged a bankrupt in that court. On January 24, 1914, the
plaintiff was duly elected trustee of the estate of the bankrupt, was confirmed,
and duly qualified. At the time of the adjudication of the corporation as a
bankrupt its outstanding capital stock was $1,500,000, divided into 15,000
shares of $100 each. The defendant is the holder of 1,500 shares of the stock.

This action was brought by the trustee in bankruptcy against defendant as
a stockholder to recover an assessment upon the stock which had been issued
to him for less than its par value and as nonassessable. The parties stipulated
in writing that a trial by jury was waived and that the case might be tried at
Buffalo, N. Y. The case was accordingly tried at Buffalo on January 22, 1915.
The court found the following facts:

That the stock was issued for the price of $10 per share, and that when that
amount was paid the stock was to be nonassessable.

That defendant paid $10 per share and no more for his stock.

That the referee in bankruptcy had ordered and adjudged that the defend-
ant be assessed $3 per share on his 1,500 shares.

That payment of the assessment was necessary in order that payment of
the debts of the Huron Iron Mining Company might be made.

That defendant refused to pay the assessment.

The court dismissed the bill.

Judgment (221 Fed. 502, —— C. C. A. ——) affirmed.

Thompson, Hine & Flory, of Cleveland, Ohio, and Morey, Bosley &
Morey, of Buffalo, N. Y., for plaintiff in error.

Strebel, Corey, Tubbs & Beals, of Buffalo, N. Y. (Warren Tubbs,
of Buffalo, N. Y., on the brief), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The
question which this case presents is whether a trustee of a bankrupt

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Minnesota corporation has a right to maintain an action against a stockholder who received his stock from the company without paying the full par value and under an agreement that it should be nonassessable. The stockholder has been assessed by the receiver in bankruptcy $3 a share on 1,500 shares, and this action has been brought by the trustee of the bankrupt to recover $4,500.

[1] This is not an action to recover the balance of an unpaid subscription to stock. The complaint alleged that the defendant was a subscriber for and the owner and holder of 1,500 shares of the capital stock of the par value of $100 per share, and that upon his subscription therefor he promised and agreed to pay $100 per share, and that he paid no part thereof except the sum of $5 per share. The District Judge, however, found as a fact that the defendant purchased his shares from the company under an express agreement between himself and the corporation that $10 per share should fully pay it for each such share and that the shares so sold should be nonassessable. He also found as a fact that in pursuance of the agreement the defendant paid the corporation $10 for each share. So long as there was an agreement with the corporation that no more than $10 need be paid for the stock, and that on the payment of that amount the stock was to be nonassessable, the agreement to that effect would be equally binding, as against the corporation, whether the defendant subscribed for the stock or purchased it. In neither event would the claim for the unpaid balance be an asset of the corporation. But if there had been a subscription for the stock, with no such understanding that on the payment of $10 per share the stock was to be nonassessable, then the claim for the unpaid balance would be an asset of the corporation. In the one case the trustee in bankruptcy might be able to maintain the action while in the other he might not. A contract entered into by a corporation with the unanimous consent of all the remaining stockholders that a particular stockholder need pay but a specified portion of the face value of the stock is binding on the corporation, although it may be declared void in favor of creditors who became such without notice of the agreement. It is to protect the right of such creditors that the present action was brought.

In Remington on Bankruptcy, § 976, the rule is stated to be that unpaid stock subscriptions in a bankrupt corporation pass to the trustee. This is undoubtedly true where the subscription is made without restriction. But it may not be everywhere true where the subscription is accompanied by an agreement similar to that which the corporation made with the defendant in the case at bar.

In re Jassoy Co., 178 Fed. 515, 101 C. C. A. 641 (1910) this court had before it the question of the right of a trustee in bankruptcy to maintain an action against stockholders to the extent of the amount unpaid on their stock. The trustee sued to enforce the payment of a balance of the par value of stock concededly issued as full-paid for property purchased, but which property had been found not to be worth the par value. In that case we held that as the bankrupt was a New York corporation the right to levy an assessment or to take other action to collect from its stockholders must be found in the statutes

of this state; that there was no such right at common law, where an original contract of subscription did not exist; and that in the federal courts the New York statute would be construed in strict conformity to the construction placed upon it by the New York Court of Appeals. We therefore held, in accordance with the decisions of that court, that no right of action passed to a trustee in bankruptcy of the corporation in behalf of its general creditors to enforce payments from stockholders to whom full-paid stock was issued for property the real value of which was less than the par value of the stock.

That case settled the law for this circuit, and we see no reason why it should be departed from in the case which is now presented to us. In the case at bar the bankrupt corporation was organized under the laws of the state of Minnesota. The defendant was a stockholder in a Minnesota corporation. The single question, therefore, is whether the Minnesota statute as interpreted by the Minnesota courts gives the receiver of the bankrupt corporation a right to maintain this action.

[2] The corporation was organized in 1906, and the Minnesota statute (Gen. St. 1913, § 6193) reads as follows:

"Save as otherwise specially limited or provided, no corporation shall issue any share of stock for a less amount to be actually paid in than the par value of those first issued."

This provision seems to have been enacted in 1866, and to have been retained in the various acts subsequently adopted and which regulate the corporations of that state.

In Minnesota Thresher M. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310 (1890), the Supreme Court held that a receiver could recover capital which had been withdrawn and refunded by the corporation as a gratuity to its stockholders. The property so withdrawn was assets of the corporation at the time of the withdrawal. Although the corporation could not recover back the moneys so paid out, the court said that everything became assets in the hands of the receiver which were assets as to creditors, and that the receiver might sue to recover them, not in the right of the corporation, but only in the right of the creditors. The reason for the decision, as explained in Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 443, 69 N. W. 331, 38 L. R. A. 415 (1896), was "because such was at one time the property of the corporation."

In Hospes v. Northwestern Mfg. Co., 48 Minn. 197, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637 (1892), the court had before it the liability of a stockholder on stock issued gratuitously as full-paid, no payment having ever been made, either in money or property. The company at the time the stock was issued was free from debt, but afterwards became insolvent. Its indebtedness amounted to about $3,000,000, and the corporate assets were not sufficient to pay any considerable part of it. The court elaborately considered the liability of one holding watered stock, and the opinion rendered has been frequently cited since by courts and text-writers. The "trust fund" doctrine announced by Justice Story in Wood v. Dummer, 3 Mason, 308, was subjected to a very discriminating criticism and rejected, as was that of an implied promise, and the liability of the stockholder was placed, where it undoubtedly should rest, upon the fraud practiced

upon the creditors. The court held that an agreement to issue, as full-paid and nonassessable, stock for which full payment was not to be made, was valid as between the company and the stockholder, but invalid as between the stockholder and creditors who became such after the stock was issued, and who could fairly be presumed to have relied on the fact that the stock had been paid for. And it was held that the right of the creditors against the stockholders in such cases was not derived through the corporation, but accrued directly to the creditors or for their benefit. In the case of In re People's Live Stock Insurance Co., 56 Minn. 180, 57 N. W. 468 (1894), the court held that the power of a receiver of an insolvent corporation to prosecute and defend actions had reference to such actions as the corporation might have prosecuted or defended, had its affairs not been taken out of its hands by the appointment of a receiver. It was declared in that case that, as the constitutional or statutory liability of the stockholders was directly to the creditors, it was no part of the assets of the corporation, and could not be enforced by the corporation. It was also held that the right to recover the balance due on a subscription for stock was an indebtedness, not to the creditors of the corporation, but to the corporation itself, and that it might be enforced by the receiver; the claim being an asset of the corporation.

In Basting v. Ankeny, 64 Minn. 133, 66 N. W. 266 (1896), the court held that the receiver of an insolvent corporation could maintain an action for an unpaid subscription for shares; that being a debt due to the corporation, and as such an asset of the corporation.

In Minneapolis Baseball Company v. City Bank, supra, the court held that a receiver of an insolvent corporation had no authority to enforce the individual liability of stockholders for the debts of the corporation. The court said:

"Everything which is still an asset of the corporation or debtor as to creditors becomes an asset in the hands of such a receiver. Among the rights which pass to him as the representative of creditors is the right to recover property of the corporation conveyed in fraud of creditors, or capital refunded without consideration to stockholders; that is, his powers and functions relate only to what is, or was at some previous time, and still is, as to creditors, the property or estate of the corporation."

We do not find in any subsequent Minnesota decisions any qualification of the doctrine announced in the above cases. Our attention has been directed to some of the later decisions, which counsel would have us believe depart from the doctrine laid down in the earlier cases; but we are unable to accept his view, and we think that all such cases are easily distinguishable, and by no means warrant the conclusion that in the state of Minnesota a receiver or trustee could maintain an action against an original holder of nonassessable stock issued for less than par to recover for the benefit of creditors the unpaid balance on the stock.

In view of our decision in the Jassoy Case and the decisions of the Minnesota courts, the District Court was right in holding that the plaintiff, as trustee in bankruptcy, has no cause of action.

Judgment affirmed.