### In re HUFFMAN–SALVAR ROOFING PAINT CO.

(District Court, N. D. Alabama, S. D.   July 25, 1916.)

No. 13,680.

BANKRUPTCY ☞145(2)—ADMINISTRATION—PROPERTY VESTING IN TRUSTEE— RIGHTS OF ACTION—STOCKHOLDER'S LIABILITY.

The liability of stockholders of an Alabama corporation for payment of stock subscriptions by transfer of property fraudulently overvalued cannot be enforced by its trustee in bankruptcy, since under Alabama law the right to enforce such liability is not a property right or asset of the corporation which prior to bankruptcy it could enforce as part of a "trust fund" for the benefit of all its creditors, but is an independent right of action existing alone in favor of creditors defrauded thereby, who have an exclusive remedy under Code Ala. 1907, § 3744, providing that judgment creditors of a corporation having executions returned "no property found" may, in equity, subject the unpaid stock subscription of one or more stockholders, without joining other stockholders and without regard to whether the corporation has called for such subscription or could maintain suit therefor; and therefore the trustee takes no title to such stockholders' liability as an asset of the bankrupt, under Bankruptcy Act, § 70 (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1913, § 9654]), which enumerates all the classes of property which the trustee acquires, nor under Bankruptcy Act, § 47, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), vesting trustees with rights of a judgment creditor in all "property not in the custody of the bankruptcy court."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 205; Dec. Dig. ☞145(2).]

In Bankruptcy. In the matter of the Huffman-Salvar Roofing Paint Company, bankrupt. On petition of trustee to enforce stockholders' liability. Petition dismissed.

A. Leo Oberdorfer and Benj. Leader, both of Birmingham, Ala., for trustee.

Henry Fitts, of Birmingham, Ala., for respondents.

GRUBB, District Judge. This proceeding is based on a petition filed by the trustee in bankruptcy in the bankruptcy proceeding, to enforce against the respondents the liability created by the Constitution and laws of Alabama of stockholders, where subscriptions to the capital stock of the corporation are paid by the transfer of property, alleged to have been fraudulently overvalued. The bankrupt has insufficient assets to satisfy its debts, apart from the alleged stockholders' liability. The stock was paid for by the transfer to the corporation of a supposed secret formula for the manufacture of fireproof paint. It may be conceded that there was a fraudulent overvaluation of the secret

formula, shown by the proof, which was transferred to pay the bankrupt for the stock issue.

The first question presented is the right of the trustee to maintain an action to enforce the liability against the respondent stockholders.

In order that the trustee be vested with such right of action, the liability must have been at some time an asset of the bankrupt.  Section 70 of the Bankrupt Act of 1898 enumerates the classes of property which the trustee acquires, and those enumerated are exclusive.  Subdivision 4 vests in the trustee "property transferred by him (the bankrupt) in fraud of creditors"; subdivision 5 "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him"; and subdivision 6 "rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

The trustee, if vested with the right to enforce the liability at all, must be so vested by virtue of one of the three mentioned subdivisions.  If the liability could be enforced by the bankrupt against the stockholder, it is clear that the trustee could enforce it, under the first or last of the three mentioned classes.  If the stockholder had agreed with the bankrupt to pay the full par value of his shares, and had failed to do so, the bankrupt corporation, after call, could have enforced the payment, before bankruptcy, and its trustee could have done so, after bankruptcy.

So, if the stockholder had originally agreed to pay in full for his shares, and had been subsequently released, without consideration moving to the bankrupt, from his liability by the bankrupt corporation, before bankruptcy, while the bankrupt could not, after and because of such release, enforce the unpaid subscription against the stockholder, the trustee, after bankruptcy, could recover it, as "property transferred by him (the bankrupt) in fraud of creditors" under subdivision 4 of section 70.

In each of these instances the liability could have been at some time at or before the filing of the petition an asset of the bankrupt and would so come under some one of the classifications of section 70, and hence the trustee could enforce it.

In this case the liability is based upon a payment in property alleged to have been fraudulently overvalued.  Whether the liability is enforceable by the trustee depends upon whether or not it ever constituted a property right of the bankrupt corporation, which could have been enforced by it before bankruptcy intervened.  If it did not, then the right to enforce it did not pass to the trustee under any subdivision of section 70, and hence not at all.

Whether or not the liability was ever an asset of the bankrupt depends upon the Constitution, laws, and decisions of Alabama relating to the stockholder's liability for a stock subscription paid by the transfer of fraudulently overvalued property.  If the Constitution and statutes of Alabama, as construed by the Supreme Court, have created a right of action in favor of the corporation for the enforcement of such liability, then the trustee's right to enforce it is clear.  On the other hand, if the liability exists alone in favor of the creditors of

the corporation and is not enforceable by the corporation in favor of itself or its creditors, and if it does not constitute property transferred by the corporation in fraud of its creditors, then the trustee in bankruptcy has no right to enforce it.

This seems clear from the terms of the Bankrupt Act, and is sustained by authority. In re Jassoy Co., 178 Fed. 515, 101 C. C. A. 641; Courtney v. Georger (D. C.) 221 Fed. 502; Courtney v. Georger, 228 Fed. 859, 143 C. C. A. 257.

In some states (Missouri and others) the liability is construed to exist in favor of the corporation, as part of its capital, which constitutes the trust fund for payment of its debts. In such states the trustee's right to recover is sustained. Babbitt v. Read (D. C.) 215 Fed. 395–412; In re Remington Auto & Motor Co., 153 Fed. 345, 82 C. C. A. 421.

In other states (Minnesota and others) the liability is construed to exist in favor of the creditors only, upon the theory that the misrepresentation of the value of the property made by the subscriber to the creditors, when relied upon by the creditor, constitutes a fraud upon the creditor, which the creditor is entitled to have redressed in his own name and right against the stockholder. In states where this doctrine obtains, the courts have held that the right of action is in the creditor alone and not in the trustee of the bankrupt corporation. In re Jassoy Co., 178 Fed. 515, 101 C. C. A. 641; Courtney v. Georger (D. C.) 221 Fed. 502; Courtney v. Georger, 228 Fed. 859, 143 C. C. A. 257.

. The solution of the case depends, accordingly, upon what is the holding of the Alabama courts as to whether, under its constitutional and statutory provisions, the liability is one existing in favor of the corporation and which passes to its trustee in bankruptcy, or one existing independently of the corporation in favor of the defrauded creditor, to whom the false representation as to the full paid character of the stock is held to have been made. Three cases in Alabama are important. In the case of Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65, the Supreme Court of Alabama decided the liability of a subscriber to stock paid by fraudulently overvalued property to creditors and intimated a doubt as to the right of a creditor, who knew or participated in the transaction, to complain of it. The opinion in this case is equally consistent with the idea that the ruling was attributed to the trust fund theory as to the fraud theory. In the case of Nicrosi v. Irvine, 102 Ala. 648, 15 South. 429, 48 Am. St. Rep. 92, the Supreme Court said:

"The capital of a corporation is regarded as a trust fund for its creditors; and upon the theory that the difference between the face value of the shares in such capital and the value of the property which has been conveyed to the corporation for such shares at an overvaluation belongs to and constitutes in part such trust fund, a court of chancery will, at the instance of creditors, conserve the integrity of the fund by decreeing the payment of such difference by the subscriber."

This would seem to support the trust fund doctrine as the applicable one. But the Supreme Court immediately says:

"But this right in the creditors is purely an equitable one and not enforceable at law at all, and enforceable in equity on the independent standing of creditors in relation to the capital stock, and not through any supposed legal or equitable right the corporation itself has to demand payment of such difference for its own benefit in any forum, for it has no such right."

This would seem to exclude the idea that the corporation or its trustee could complain.

The case of Lea et al. v. Iron Belt Mercantile Co., 147 Ala. 421, 425, 42 South. 415, 416 (8 L. R. A. [N. S.] 279, 119 Am. St. Rep. 93), seems decisive of the Alabama rule. The Supreme Court reasserts the liability of a stockholder to creditors for unpaid stock, purporting to have been fully paid, but by fraudulently overvalued property. The stockholder Lea set up as in defense that the complaining creditor knew of the overvaluation. Of this defense, the court said:

"The question presented for our determination, in view of the fact that there was an overvaluation, is whether the fact of knowledge by complainant of the overvaluation, if true, is a good defense, and whether this defense is supported by the evidence. The complainant was organized in 1891, and made the loan, the basis of the judgment sought to be enforced, in 1894 or 1895. It therefore became a creditor of the debtor corporation after that corporation had accepted the lands in discharge of the subscription obligations at the overvaluation complained of. It cannot be doubted that if complainant had notice of the actual state of affairs, being a subsequent creditor, it cannot disturb the arrangement between the company and its stockholders. It is impossible, with notice of the character and value of the land, for complainant to have acted on and trusted appearances, rather than the true condition of affairs, and, therefore, to have been deceived. This seems to be the universal doctrine of the courts. This principle, as well as the one upon which the equity of the bill must rest, are ably discussed by Messrs. Clark & Marshall in their work on Private Corporations, at page 2327. These authors, after showing that assets of a corporation are not a trust fund for creditors in any proper sense, say: 'It has been repeatedly held, in the absence of special statutory provisions, that where a corporation issues stock as bonus, or for less than its par value in cash, or for property taken for an overvaluation, the transaction cannot be assailed, and full payment by the stockholders required, by or for the benefit of persons who became creditors before the stock was so issued or who participated in the transaction, or who afterwards dealt with the corporation and became creditors with knowledge, for in neither of these cases is there any fraud as against them.' 'It is difficult, if not impossible,' said the Minnesota Supreme Court, 'to explain or reconcile these cases upon the trust fund doctrine, or, in the light of them, to predicate the liability of the stockholder upon that doctrine. But by putting it upon the ground of fraud, and applying the old and familiar rules of law on that subject to the peculiar nature of a corporation and the relation which the stockholders bear to it and to the public, we have at once rational and logical ground on which to stand. The capital of a corporation is the basis of its credit. It is a substitute for the individual liability of those who own its stock. People deal with it and give it credit on the faith of it. They have the right to assume that it has paid-in capital to the amount which it represents itself as having; and if they give it credit on the faith of that representation, and if the representation is false, it is a fraud upon them; and, in case the corporation becomes insolvent, the law, upon the plainest principles of common justice, says to the delinquent stockholder, "Make that representation good by paying for your stock." It certainly cannot require the invention of any new doctrine in order to enforce so familiar a rule of equity. It is the misrepresentation of fact in stating the amount of capital to be greater than it really is that is the true basis of the liability of the stockholder in such cases; and it follows that it is only those creditors who have relied, or who can fairly be presumed to have relied, upon the professed

amount of capital, in whose favor the law will recognize and enforce an equity against the holders of bonus stock. This furnishes a rational and uniform rule, to which familiar principles are easily applied, and which frees the subject from many of the difficulties and apparent inconsistencies into which the trust fund doctrine has involved it; and we think that, even where the trust fund doctrine has been invoked, the decision in almost every well-considered case is readily referable to such a rule.' * * * This principle does not seem to be controverted, but is sought to be avoided only by a denial of the fact of notice."

The quoted language is inconsistent with the idea that the basis of the Alabama rule is the trust fund doctrine. That doctrine, as controlling the decision, is expressly repudiated, and the court rests its decision upon the fraud doctrine, as in the Minnesota cases. Nor is the discussion obiter. The defense of notice of the complaining creditor of the overvaluation, at the time credit was extended, would have no place where the trust fund doctrine was the basis of the liability. If the difference between the true and exaggerated value is an asset of the corporation, then all classes of its creditors should share in it—prior creditors, subsequent creditors with notice, and creditors who participated in the transaction. All these are eliminated by this decision of the Alabama Supreme Court from a share in the recovery, and this could only be so upon the idea that the fraud doctrine obtained, and that the mentioned classes could not have been defrauded, since they did not rely upon the false representation as to value in extending credit. A choice between the adoption of the trust fund and of the fraud doctrine was necessary to a decision of Lea's liability as a stockholder to the complaining creditor, since his defense was that the complaining creditor had notice of the overvaluation. This could only constitute a defense in the event the fraud doctrine was adopted. The court held it to be a complete defense. On page 431 of 147 Ala., on page 418 of 42 South. (8 L. R. A. [N. S.] 279, 119 Am. St. Rep. 93), the court said:

"It would, therefore, necessarily follow that, complainant being chargeable, at the time of the creation of its debt, with notice of the overvaluation of the land accepted by the debtor corporation in discharge of the stock subscription, it cannot maintain this bill to charge respondent Lea on his subscription."

This case commits the Alabama courts to the fraud doctrine with its necessary incidents. One of these is that creditors whose debts were incurred before the stock issue complained of, or those whose debts were incurred after, but with notice of the overvaluation, cannot complain of the overvaluation. Another is that the corporation never could have enforced the liability, as it never constituted a liability to the corporation, but only to the creditors thereof, and hence that its trustee in bankruptcy could not enforce it.

This is also the doctrine adopted by the Supreme Court of the United States in Coit v. Gold Amalgamating Co., 119 U. S. 343, 347, 7 Sup. Ct. 231, 232 (30 L. Ed. 420), in which the court said:

"If it were proved that actual fraud was committed in the payment of the stock, and that the complainant had given credit to the company from a belief that its stock was fully paid, there would undoubtedly be substantial

ground for the relief asked. But where the charter authorizes capital stock to be paid in property, and the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint. The case is very different from that in which subscriptions to stock are payable in cash, and where only a part of the installments has been paid. In that case there is still a debt due to the corporation, which, if it become insolvent, may be sequestered in equity by the creditors, as a trust fund liable to the payment of their debts. But where full-paid stock is issued for property received, there must·be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account. A gross and obvious overvaluation of property would be strong evidence of fraud. Boynton v. Hatch, 47 N. Y. 225; Van Cott v. Van Brunt, 82 N. Y. 535; Le Fevre v. Carr, 27 Pa. 413."

The case of Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, was not one of fraudulent overvaluation, but of partial payment, with an agreement that the stock, as against the corporation, should be fully paid.

No subsequent Alabama case has been cited overruling the Lea Case. The case of Hundley v. Hewitt (Ala.) 71 South. 419, is clearly distinguishable. In that case the subscriber gave notes for the payment of his stock subscription, which he procured thereafter, upon the insolvency of the corporation, to be canceled and surrendered to him, without consideration. The notes were assets of the corporation and the effect of the voluntary cancellation of them was to transfer property of the corporation in fraud of its creditors. A right of action for their recovery would therefore clearly vest in a receiver representing creditors or in a trustee in bankruptcy. No such fraudulent transfer can be predicated on the facts of the transaction which is the basis of this proceeding, since the corporation agreed to receive the formula in full payment of respondents' stock purchase, and there was never a liability on the part of respondents to the corporation for more, and so nothing on which to base a fraudulent retransfer or surrender, as in the case of Hundley v. Hewitt. The additional liability of the respondent stockholders was alone to subsequent creditors of the corporation, who did not know of the overvaluation.

The same reason shows the inapplicability of the amendment of 1910 to section 47 of the Bankruptcy Act. The part relied upon by the trustee as conferring the right to maintain the suit is as follows:

"And also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

The words "property not in the custody of the bankruptcy court" means property of the estate in bankruptcy, as appears from its previous use in the section. The liability of the stockholders upon an overvaluation is to creditors and not to the corporation, and hence is not property of the bankrupt estate. The amendment is therefore inapplicable.

The statute of Alabama, section 3744, Code 1907, provides a remedy in favor of judgment creditors of a corporation having executions returned "no property found" by bill in equity to subject the unpaid stock subscriptions of one or more stockholders in the corporation,

without joining the other stockholders and without regard to whether the corporation has called for such subscription or could maintain suit therefor against the stockholder, which seems to be adequate and exclusive of the right of a trustee in bankruptcy, at least where the unpaid subscription is due to an alleged fraudulent overvaluation of property transferred to the corporation in payment of the subscription.

For these reasons, I think the trustee in bankruptcy had no right to maintain the petition against the respondents, and the petition for review is granted, and the petition of the trustee ordered dismissed at his costs.