### In re BERLER SHOE CO., Inc.

(District Court, S. D. New York. October 15, 1917.)

1. BANKRUPTCY &#9901;&#8658;387 — CORPORATIONS — STOCK ISSUED FOR INSUFFICIENT PROPERTY—RIGHT OF CREDITORS—COMPOSITION.

Any right against stockholders, because of a corporation issuing stock in exchange for property of inadequate value, belonging, under Stock Corporation Law N. Y. (Consol. Laws N. Y. c. 59) § 55, to the creditors, is unaffected by composition with creditors by the bankrupt corporation.

2. BANKRUPTCY &#9901;&#8658;375—COMPOSITION—TIME OF OFFER.

Composition by bankrupt with creditors should be rejected; the offer to creditors being before the bankrupt was examined in open court and had filed in court its schedules.

In Bankruptcy. In the matter of the Berler Shoe Company, Incorporated, bankrupt. On motion to confirm report of special master. Composition rejected.

&#9901;&#8658;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harold Remington, of New York City, for objecting creditors.
Williams, Folsom & Strouse, of New York City, for bankrupt.
Lesser Bros., of New York City, for creditors.

AUGUSTUS N. HAND, District Judge. This is a motion to confirm the report of the special master recommending that an offer of composition for 20 per cent. in cash should not be confirmed because the master had not satisfied himself: (1) That it is for the best interest of the creditors; or (2) that the offer and its acceptance are in good faith.

Oscar Berler, a retail shoe dealer, went into bankruptcy in May, 1915, and thereafter effected a composition with his creditors of 60 per cent. Of this 60 per cent. 10 per cent. was paid in cash, and 50 per cent. in notes of the Berler Shoe Company, Incorporated, the bankrupt in this proceeding. These notes were indorsed by B. Levy & Son. The latter were guaranteed against loss to the extent of $20,-000, which was the amount of the notes by Henry Weiss. Oscar Berler executed a general assignment for the benefit of creditors prior to the filing of the petition in bankruptcy. Henry Weiss contracted with Berler to guarantee B. Levy & Son against any liability arising from their indorsement of the bankrupt's notes in return for an assignment to Weiss of the business and assets of Berler in the event of a composition. Henry Weiss assigned his interest to his son, Nat Weiss, as a gift, in order to start him in business, and proceeded to have the Berler Shoe Company incorporated to carry out the plan of composition.

Nat Weiss transferred the business and assets, including the good will and two lots of land on Morris avenue, Morris Park, to the Berler Shoe Company in return for an issue of $12,800 par of the capital stock of that company. This transfer was subject to payment out of the Berler assets of 10 per cent. upon the claims of creditors, $2,992.-22 for expenses of administration in bankruptcy, $500 fees for incorporating the company, and notes of the Berler Shoe Company amounting to $20,000, which represented the 50 per cent. payment to creditors. The directors of the Berler Shoe Company found that the business and property of Berler had a value amounting to $12,800, and by resolution ordered the issue of the stock to that amount. As the payments from the Berler assets and upon the notes of the company aggregated $23,492.22, the $12,800 represented value wholly in excess of this sum of $23,492.22, or a total of $36,292.22. The $12,800 of stock was issued upon the theory that the good will of the business was worth $5,000, the fixtures $5,276, and the two lots of land, subject to a mortgage indebtedness of $2,400, had an equity of $2,400.

The Berler Shoe Company, Incorporated, began business with the assets and liabilities above referred to, paid off the $20,000 of notes, and shortly after, and in about a year, went into bankruptcy, and now offers a composition to its creditors of 20 per cent. Nearly half of the creditors voted against the composition. Shortly before the failure there was a fire in one of the stores of the Berler Shoe Company, from which insurance moneys of $4,406.87 were collected, and there was a salvage of $541.25, or altogether $4,948.12. There was paid to

Henry Weiss, the Metropolitan Shoe Company, of which he had been the president, B. Levy & Son, and to Ottensoser, the sum of $4,770.24, within a month before the petition was filed. Those are said by the objecting creditors to have been illegal preferences.

[1] I agree with the master that there is no evidence of concealment of assets. Section 55 of the Stock Corporation Law of New York provides that:

"In the absence of fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive."

It cannot be said that there was an adequate payment for the stock issued, but the remedy is statutory, and the Circuit Court of Appeals of this Circuit, as well as the Appellate Division of the Supreme Court of New York, have held that no right of recovery would pass to the trustee in bankruptcy. In re Jassoy Co., 178 Fed. 515, 101 C. C. A. 641; Courtney v. Georger, 228 Fed. 859, 143 C. C. A. 257; Breck v. Brewster, 153 App. Div. 800, 138 N. Y. Supp. 821. The statutory remedy is only given to creditors, and does not inhere in the corporation. The latter does possess a right of action to enforce an unpaid stock subscription. Any right of the corporation is contractual. In the case at bar, where the stock was issued in exchange for the property for which it was offered, no contractual liability remains. I can see no reason why the right of the creditors against the stockholders, if it exists, would be affected by the composition.

The further objection to the composition is made upon the ground that the recovery by the trustee of the alleged preferential payments would create an estate that would yield a greater dividend than the 20 per cent. offered.

| | | |
|---|---|---|
| Payments which are claimed to be preferential aggregate | | $4,770 24 |
| The cash in hands of the trustee | | 2,332 32 |
| Estimated value of equity in two lots on Morris avenue | | 1,000 00 |
| | | $8,102 56 |
| Expenses of administration, including recovery of alleged preferred payments may be estimated at | $1,500 00 | |
| Preferred claims | 73 33 | 1,573 33 |
| | | $6,529 23 |
| Net amount for division among proved unsecured claims of | | $20,314 91 |
| And claims alleged to have been illegally paid of | | 4,770 34 |
| Would produce a dividend of 26 per cent | | $25,085 25 |

On the other hand, if the litigation to recover the alleged preferential payments failed, the dividend, after deducting from existing assets aggregating $3,332.32, estimated expense of administration of $750, and preferred claims of $73.33, would amount to only about 12 per cent. While some of the payments were probably preferential, others apparently represented realization from insurance moneys pledged for current advances, and I do not think the evidence indicates that the creditors would realize more than 20 per cent. if such preferential payments as were made were recovered.

[2] In regard to the consents to the offer of composition which were signed before, and not after the bankrupt corporation had been

examined, it is argued that the matter does not properly come before me, because the only parties criticizing the master's findings as to this matter are moving to confirm the report. I have, of course, entire control over the master's report, which is only for convenient administration, and does not prevent a consideration of the record as it stands. I agree with the criticism of the common practice in compositions and regard it as irregular to have composition offers made and signed before examination of the bankrupt, even if they are not formally filed until afterwards. Such a practice does away with that access to full information on the part of the creditors which the statute aims at. If they have the right to withdraw their consents before the composition offer is filed, it may be doubted whether they are aware of this right, and they are by their signatures in fact, if not in law, committed to a course of action in a way not contemplated by the Bankruptcy Act and contrary to its spirit as well as its express language.

It is not likely that a creditor will seek any information after he has consented to an offer of composition, even if the offer has not been filed. Nor is he likely ever to attend the examination after he has taken this step. He is therefore, under the common practice, deprived of the plain safeguards of the statute.

I hold that the composition should be rejected, because it was offered to the creditors before the bankrupt was examined in open court and had filed in court his schedules. The master is allowed $150 as compensation.