### In re ASSOCIATED OIL CO.

### SIMONS v. THOMPSON et al.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1923.)

### No. 3816.

1. **Bankruptcy** ⊶145(2)—**Trustee of bankrupt corporation held not vested with right of action against stockholders for unpaid subscriptions.**

Under Rev. Code S. D. 1919, § 8779, giving any creditor of a corporation the right to sue stockholders for the amount unpaid on their stock, and imposing the liability on the holder of the stock when such action is commenced, and section 8775, providing that, when stock is issued for property, the judgment of the directors, exercised in good faith, shall be conclusive as to the value of the property, the trustee in bankruptcy of a corporation is not vested with a right of action against holders of stock which was issued as full paid in exchange for property; their liability, if any, not being an asset of the corporation, but a right personal to creditors.

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Bankruptcy** ⊜⇒145(2)—**Trustee of corporation not vested with right of creditor to sue stockholders.**

That a trustee has the rights of a creditor with execution returned unsatisfied does not vest the trustee of a corporation with all the rights of creditors against stockholders of the corporation.

Petition to Revise an Order of the District Court for the Western District of Kentucky; Walter Evans, Judge.

In the matter of the Associated Oil Company, bankrupt. On petition of Lee L. Simons, trustee, to revise order of District Court, in favor of Mitchell Thompson and others. Modified.

W. W. Watts, of Louisville, Ky. (Gifford & Steinfeld, of Louisville, Ky., on the brief), for petitioner.

Allen P. Dodd, Lawrence S. Leopold, and Percy N. Booth, all of Louisville, Ky. (M. H. Thatcher, Walter E. Huffaker, Walter S. Lapp, and C. B. Seymour, all of Louisville, Ky., on the brief), for respondents.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The bankrupt corporation was organized under the laws of South Dakota, with a capital stock of $100,000, which purported to be issued as fully paid, in exchange for oil leases transferred to the corporation by the original organizers. They returned $40,000 of stock to the corporation treasury, and it was given as a so-called bonus in connection with the sale of corporation notes in order to raise working capital. After some apparent success, the enterprise failed, and bankruptcy followed. The trustee in bankruptcy commenced a proceeding before the referee for the purpose of making an assessment against those who received this bonus stock, and upon the theory that they were liable as for unpaid subscriptions. It is not necessary to recite the facts which would bear upon the existence of any liability. The referee made an order for assessments, based upon the idea that at least a prima facie liability against the stockholders appeared. Upon the stockholders' petition to review, the District Court directed that the referee's order be vacated and that he proceed with the hearing of the trustee's petition in a manner and upon principles pointed out by the District Court. The trustee files this petition to revise, asking that the order of the District Court be set aside and that the order of the referee be in substance affirmed.

[1] We first meet the question whether the trustee in bankruptcy has the right to enforce any such liability. As this court decided in Kiskadden v. Steinle, 203 Fed. 375, 121 C. C. A. 559, and Courtney v. Croxton, 239 Fed. 247, 152 C. C. A. 235, and Re National Co. (C. C. A.) 272 Fed. 938, this question depends upon the statutes and decisions of the state of organization, and the test seems to be whether, under the state laws, such an action vests, on the one hand, in an assignee for the benefit of creditors or an equity receiver, or, on the other hand, accrues to specific creditors. This in turn seems to depend upon whether such a liability is in a fair sense an asset of the corporation. If so, it passes to the receiver or assignee; otherwise, it does not. The

statutes of South Dakota which are thought to be pertinent are parts of sections 8775, 8779, and 2475, Revised Code. No declaration of any liability on unpaid stock is to be found in the statutes, excepting as contained in section 8779, which says:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not fully paid the capital stock held by him, and in such action the court must ascertain the amount that is unpaid upon the stock held by each stockholder and for which he is liable, and a several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation."

Section 2475 provides that a receiver may be appointed by the equity court:

(1) "In an action * * * by a creditor to subject any property or fund to his claims. * * * (5) In the cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency. * * * (6) In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

As to the issue of stock for property the pertinent provisions are:

Constitution, § 8, art. 17: "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

Revised Code, § 8775: " * * * When property is taken by the corporation in consideration for capital stock of the corporation, the judgment of the board of directors, made in good faith and entered in the minutes of the corporation, shall be conclusive as to the value of such property. * * * "

Under section 8779, in connection with those sections which provide generally for the calling in of unpaid subscriptions in installments by the directors of the corporation, there seems indeed grave room for doubt whether even a direct promise to the corporation to pay the amount subscribed would be (as to the part which had not been called by the directors) an asset of the corporation, which would pass to the insolvency receiver, rather than a specific liability in favor of the creditor who brought suit. This doubt would be the greater because the declared stockholder's liability is against the one who owns the stock at the time the suit by the creditors is commenced, apparently without regard to the original promisor; but whatever might be the case as to a direct and unperformed promise to pay for stock, we find no support in these statutes for any right in an insolvency receiver to collect from a stockholder who has paid with property which has been received in full payment; and, lacking a statute or a settled state rule, we are not convinced that the right exists.

It is commonly held that a corporation, which has issued capital stock as fully paid and under a contract not to require further payment, cannot itself repudiate that contract and bring suit for the remainder. The only denial of this rule is by the courts which hold that the acceptance

of a certificate of stock raises an implied subscription and promise to pay the par value (though how there can be an implied promise to pay in the face of an express promise not to ask payment is not clear), and that any contract to accept less than par in full payment is ultra vires and void, and that, it being void, the corporation may sue upon the implied promise without regard to the satisfaction. This is the holding of the Delaware courts (Cooney Co. v. Arlington Co., 11 Del. Ch. 286, 101 Atl. 879; s. c., sub nom. Du Pont v. Ball, 11 Del. Ch. 430, 106 Atl. 39, 7 A. L. R. 955), and of the New Jersey cases relied upon in the Delaware case. A contract to accept $50 in full payment of a $100 subscription might be ultra vires, but a contract fixing the value of property which is to be taken in payment is not ultra vires. It is good and valid, unless it is voidable because it is fraudulent. If fraudulent, who was defrauded? The corporation, with full knowledge, has acquiesced; future stockholders, who may be the ultimate sufferers, are not involved in a case like this one; and no one remains to be defrauded excepting a subsequent creditor. If he is, it is a wrong and injury to him, and others are not concerned, save as it may be necessary to pro rate an asset or a liability among those similarly interested therein. These are, as we understand, the principles upon which it has been decided that, as to New York and Minnesota corporations, the trustee in bankruptcy cannot recover upon liabilities of this kind. In re Jassoy (C. C. A. 2) 178 Fed. 515, 101 C. C. A. 641; Courtney v. Georger (C. C. A. 2) 228 Fed. 859, 143 C. C. A. 257; Courtney v. Croxton, supra.

So far as section 8779 has any bearing, we consider it of the type of the New York and Minnesota statutes involved in these cases just cited, rather than of the Delaware and New Jersey statutes. Cooney Co. v. Arlington Co., supra. So far as the enforcement of any liability of stockholders, where property has been taken in full payment, depends upon the theory, as a matter of general law, that it is an asset of the corporation, we find the question covered by what was said by Judge Lurton, speaking for this court in Rickerson Co. v. Farrell Co., 75 Fed. 554, 560, 23 C. C. A. 302, 308:

"In the absence of statutory or charter provisions * * * requiring original stock subscriptions to be paid in full, there is no reason why the corporation should not be concluded by its contract to receive less than par in full payment for stock subscribed or sold. Such an agreement, though binding upon the corporation, is not valid as to creditors who become such in actual or presumed reliance that the capital stock is in fact what it is represented as being."

This is plainly inconsistent with the idea that the right to repudiate the contract and collect the difference in value as upon an unpaid subscription is a corporate asset. That the Circuit Court of Appeals of the Second Circuit is of the same opinion is apparent from Courtney v. Georger, supra, 228 Fed. at page 862, 143 C. C. A. 260, in which it is said (approving the Hospes Case, infra):

"The liability of the stockholder was placed, where it undoubtedly should rest, upon the fraud practiced upon the creditors."

It should be noted that the conclusions in Delaware and New Jersey are planted upon the very broad statement of the trust fund theory,

as formulated in Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944, and Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; that this theory was considered and much limited by the Supreme Court of Minnesota in Hospes v. Northwestern Co., 48 Minn. 174, 192, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637; and that similar limitations were approved by the Supreme Court of the United States in Hollins v. Brierfield, 150 U. S. 371, 381–385, 14 Sup. Ct. 127, 37 L. Ed. 1113. Further it should be noted that the right to recover such a liability has always been found to depend either upon the trust fund theory, in which case it becomes an asset of the corporation, or upon the "holding out" theory, in which case the defrauded creditor has the right of action, and in Rickerson v. Roller Mill Co., supra, this court clearly adopted the latter theory. In a case where property had been conveyed in full payment for stock issued, and where it was thought that the acceptance of the property was a mere subterfuge to avoid payment, it was held that the creditor might recover the debt which accrued before he had knowledge that the property had been received as full payment of stock, but could not recover for so much of his debt as accrued after that time.

The theory that, under the South Dakota law, the cause of action vests in the trustee, gets no help from any reported decision which has been cited and which involves that law. On the contrary, in the only two cases we have seen in which a recovery has been sought under section 8779 of the South Dakota Code, it has been assumed that the right of each creditor to recover thereunder is his individual right (Shugart v. Maytag, Iowa, 188 Iowa, 916, 176 N. W. 886; Clinton v. Jamison [C. C. A. 3] 256 Fed. 577, 167 C. C. A. 607); and the only South Dakota cases discovered which treat the "property for stock" provision of section 8775 wholly ignore any possible liability in favor of the corporation against one who receives stock in exchange for overvalued property, but treat the stock as void (Walton v. Standard Co., 43 S. D. 576, 181 N. W. 96; Northwestern Co. v. French, 44 S. D. 195, 183 N. W. 117); and the same result was sought and approved in a case of sale of original stock for less than par (Anderson v. Mining Syndicate, 26 S. D. 558, 128 N. W. 1016).

[2] We do not overlook the fact that the trustee now has the rights of a creditor with execution returned unsatisfied; but this was true when the Courtney Cases arose, and we do not understand that it vests in the trustee any right which a creditor has against one who stands practically as guarantor of the bankrupt's debts, and that is, in large measure, the position of the stockholders if they are liable to pay as now claimed.

Upon these considerations we conclude that the trustee has no right to recover upon the liability claimed, if it in fact exists. It follows that the referee's order should be vacated, with instructions to dismiss the petition. As the order of the District Court did not go so far as this, it will be modified accordingly, and an order will be entered in accordance with this opinion.

The respondents in this court will recover their costs.