ED. HICKLIN, Trustee, Appellant, v. W. J. CUMMINGS et al., Appellees.

No. 40440.

JANUARY 13, 1931.

688

*Bollinger & Block* and *E. R. Hicklin,* for appellant.

*La Monte Cowles* and *Walter W. Price,* for W. J. Cummings, A. N. Kilpatrick, E. E. Caldwell, J. C. Brown, J. R. Carithers, R. J. Kennedy, N. E. Hutchinson, J. P. Baird, R. J. Allen, M. W. Baird, J. E. Boltz, J. J. Caldwell, Frank Johnston, W. J. Lane, French Martin, H. H. Martin, S. M. McClure, Mel McElhinney, William McElhinney, E. L. McKnight, Fred Mehmken, and R. G. Reed, appellees.

*Wilson & Jackson,* for Robert Kennedy, William McDonald, and J. C. Brown, appellees.

KINDIG, J.—The plaintiff-appellant, in his petition, filed March 3, 1929, in the Des Moines County district court, so far as material, states that, on March 1, 1928, upon the petition of three creditors, the Garland Elevator & Supply Company, a corporation, was duly adjudged a bankrupt. Thereafter, the plaintiff-appellant, Ed Hicklin, was elected trustee in bankruptcy for the bankrupt estate.

W. J. Cummings, Robert Kennedy, A. N. Kilpatrick, E. E. Caldwell, J. C. Brown, J. R. Carithers, R. J. Kennedy, N. E. Hutchinson, J. P. Baird, R. J. Allen, M. W. Baird, J. E. Boltz, J. J. Caldwell, Frank Johnston, W. J. Lane, French Martin, H. H. Martin, S. M. McClure, W. E. McDonald, Mel McElhinney, William McElhinney, E. L. McKnight, Fred Mehmken, R. G. Reed, J. J. Robb, and W. E. Willson, defendants and appellees, each is, or at some time during the existence of the corporation was, a director of the defunct institution, and as such, from time to time "knowingly consented" that the in-

debtedness of the company exceed the statutory limit, as prohibited by Section 8380 of the 1927 Code, which reads:

"If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers of such corporation knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess."

A motion to dismiss the petition containing the foregoing allegations was filed in the district court by the appellees, upon the theory, among others, that the action cannot be maintained by the appellant, trustee in bankruptcy. This motion was sustained by the district court, and the appellant seeks to reverse the judgment entered below, on the ground that he, as trustee, has authority to bring this proceeding on behalf of the creditors.

It is argued by the appellant that he, as trustee in bankruptcy, has a right to recover from the appellees, as directors, the moneys in question, for the reason that they constitute a trust fund, and therefore are subject to administration under the equity powers of the bankruptcy court. Those moneys thus to be collected from the directors being a trust fund, appellant then concludes that the provisions of Sections 110 and 75, in Title 11, of the United States Code, Annotated, are broad enough to include the same, and permit him, as trustee, to collect and make distribution thereof. These sections of the United States Code read as follows:

"110 * * * (a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt * * * to all * * *; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

"75 * * * (a) Trustees shall respectively * * *; (2) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court * * *; and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with

all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; *and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied * * *.''* (The italics are ours.)

See *Des Moines Joint Stock Land Bank v. Danson,* 206 Iowa 897.

Because of the foregoing italicized provisions in the Federal statutes here set forth, together with the trust fund theory above announced, appellant contends that he is entitled to succeed in this case.

On the other hand, appellees seek to sustain the district court on the ground that the funds here sought by the appellant never belonged to the corporation, and therefore the trustee in bankruptcy is not entitled to the same. Rather than being the property of the corporation, appellees suggest that the money here sought to be recovered belongs to the certain individual creditors affected by the directors' alleged wrongful acts. Thus it is apparent that the one question in this controversy involves the settlement of those conflicting claims. In order to solve this problem, it is necessary to analyze the Federal bankruptcy statutes, together with the state legislation here involved, and the judicial decisions made under each.

Previous to the amendment of the Federal Bankruptcy Act, made in 1910, it was generally held by the courts that the trustee in bankruptcy received no greater rights or equity in and to property than that held by the bankrupt. Putting the thought differently, before the amendment, the courts declared that the trustee, so far as title and right to property was concerned, simply stepped into the shoes of the bankrupt. *Des Moines Joint Stock Land Bank v. Danson* (206 Iowa 897), supra; *In re Hammond,* 188 Fed. 1020; *In re Smith-Flynn Commission Co.,* 292 Fed. 465; *Burroughs Adding Mach. Co. v. Bogdon,* 9 Fed. (2d Ser.) 54; *Albert Pick & Co. v. Wilson,* 19 Fed. (2d Ser.) 18.

By the amendment of 1910, Congress enlarged the powers of the trustee in bankruptcy, so that he could receive, obtain, and administer property belonging to the bankrupt, although others may at the time, illegally or inequitably, under the Bankruptcy Act, have possession thereof, claim title thereto, or a

lien thereon. See cases above cited. An illustration of this thought is found in the following excerpt from *Albert Pick & Co. v. Wilson* (19 Fed. [2d Ser.] 18), supra, where the Circuit Court of Appeals, Eighth Circuit, declared, on page 19:

"The amendment [the one under consideration] provides, in effect, that the trustee shall have the same title to the property of the bankrupt in the custody of the court that a creditor holding a lien by legal or equitable proceedings levied against the property would have under a state law, and, as to property not in the custody of the court, the trustee should stand in the position of a judgment creditor holding an execution duly returned unsatisfied."

Continuing on page 20, the court further said:

"The intention of the Bankruptcy Act prior to 1910 was that the trustee should take the estate precisely where he found it, with no additional rights, excepting, of course, the specific right to set aside preferences and liens acquired within the four-month period. *York Mfg. Co. v. Cassell,* 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782. But, as pointed out in *Smith-Flynn Commission Co.,* supra [292 Fed. 465], and the Congressional Record, 61st Congress, 2d Session, 2275-2277, the amendment under discussion was designed to supersede that decision. The courts at first failed to give full effect to the intention of Congress. If its operation is restricted to cases in which a creditor has in fact acquired a lien, etc., by legal or equitable proceedings, practically no change results, because, under Section 67c (Comp. St., Sec. 9651) the trustee already had such a lien, if created within four months. The better view would seem to be that the amendment was designed to reach those cases in which no creditor had acquired such a lien, and to give the trustee for the benefit of the estate the potential rights of creditors with such liens. * * * In other words, the amendment arms the trustee with process to the same extent that any judgment creditor would have according to the law of the particular state, and he is not necessarily concluded by an instrument or agreement which might have been good against the bankrupt, had bankruptcy not intervened."

Broad as the amendment thus makes the Federal Bankruptcy

692

Law, nevertheless it does not extend the act to include property which did not legally or equitably belong to the bankrupt at any time. For instance, under Section 110, above quoted, the trustee is "vested by operation of law with the title of the bankrupt * * * to all * * * property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." So far, then, as Section 110 is concerned, the trustee in bankruptcy is vested with the title of the bankrupt, plus those rights against preferences, etc., created by the Bankruptcy Act. Under that provision, appellant is not entitled to possess and distribute property not belonging, and which at no previous time belonged, to the bankrupt. While, under Section 75, previously set forth, the trustee in bankruptcy is given "the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied," yet that has relation necessarily to the bankrupt's property, and not to that which he never owned, but which at all times was owned by another person.

Sections 110 and 75, supra, in the United States Code, Annotated, must be read and considered together, as illustrated by a quotation from *In re Hammond* (188 Fed. 1020), supra, page 1021:

"But the act of June 25, 1910, amending the Bankruptcy Law, adds to Section 47, Par. "a" [of the statute there referred to], these words: 'And such trustees, as to all properties in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.' It seems that this language might have found a more appropriate place in Section 70 of the act [there referred to]; but, however that may be, it is plain that the two sections must now be construed together * * *."

Following the thought hereinabove expressed, the Circuit Court of Appeals in the Sixth Circuit, while considering *In re Associated Oil Co.*, 289 Fed. 693, on page 697 said:

"We do not overlook the fact that the trustee now [after the amendment aforesaid] has the rights of a creditor with execution returned unsatisfied; but this was true when the Courtney cases [*Courtney v. Georger,* 143 C. C. A. 257 (228 Fed. 859); *Courtney v. Croxton,* 152 C. C. A. 235 (239 Fed. 247)] arose, and we do not understand that it vests in the trustee any right which a creditor has against one who stands practically as guarantor of the bankrupt's debts, and that is, in large measure, the position of the stockholders if they are liable to pay as now claimed."

Likewise, the Kentucky Court of Appeals, in *Tiger Shoe Mfg. Co.'s Trustee v. Shanklin,* 125 Ky. 715 (102 S. W. 295, 31 L. R. A. [N. S.], 365), on page 723, asserted:

"There is, however, a difference between the right to recover unpaid subscriptions and the right to enforce the double-liability statute. The obligation on the part of the shareholder to pay for the stock subscribed for by him is a direct undertaking upon his part, and the unpaid subscriptions are a trust fund for the benefit of the creditors; whilst his liability for an amount equal to the value of his stock is a collateral or secondary obligation, in the nature of security, and the bankrupt act, as amended in 1903 (Act Feb. 5, 1903, c. 487, Sec. 3, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683]), provides that: 'The bankruptcy of a corporation shall not release its officers, directors or stockholders as such from any liability under the law of a state or territory or of the United States.' It will thus be seen that the fact that the corporation is adjudged a bankrupt does not relieve the stockholders from the individual or double liability imposed by the statute. This liability cannot be enforced by the corporation. *It is not a corporation asset, nor a part of the estate of the corporation, and hence does not pass to the trustee* [in bankruptcy], *but remains subject to the demands of the creditor if the assets of the corporation are insufficient to discharge his debt. And this individual liability the creditor may proceed to enforce, without joining the trustee* [in bankruptcy], *and without regard to the act of bankruptcy."* (The italics are ours.)

See, also, *In re Jassoy Co.,* 101 C. C. A. 641 (178 Fed. 515);

*Whitman v. Oxford Nat. Bank,* 176 U. S. 559 (20 Sup. Ct. Rep. 477, 479).

Manifestly, the italicized portion of Section 75, above quoted, refers only to the property which the bankrupt, and hence his creditors, under the Bankruptcy Law legally or equitably own, regardless of certain purported conveyances to, and alleged liens held by, others. It has no reference to the property or rights in property belonging to third persons. Underlying the motive of Congress (as shown by the Congressional Record) in enacting the amendment aforesaid was the desire to enable the trustee in bankruptcy to sequester the properties and equities of the bankrupt, as receivers and trustees in state courts generally already were enabled to do when executing trusts. Therefore, the important inquiry is: Does the money sought to be recovered in the case at bar belong to the bankrupt estate, as contemplated by the Federal Act? The answer to that inquiry will be found in our state statute aforesaid, as interpreted by the decisions of this court. *In re Associated Oil Co.* (289 Fed. 693), supra; *Courtney v. Croxton,* 152 C. C. A. 235 (239 Fed. 247); *Fidelity Ins., Tr. & S. D. Co. v. Mechanics' Sav. Bank,* 38 C. C. A. 193 (97 Fed. 297); *Mechanics' Sav. Bank v. Fidelity Ins., Tr. & S. D. Co.,* 87 Fed. 113; *Courtney v. Georger,* 143 C. C. A. 257 (228 Fed. 859); *In re Huffman-Salvar Roofing Paint Co.,* 234 Fed. 798; *Hale v. Allinson,* 188 U. S. 56 (23 Sup. Ct. Rep. 244); *Evans v. Nellis,* 187 U. S. 271 (23 Sup. Ct. Rep. 74); *Whitman v. Oxford Nat. Bank* (176 U. S. 559), supra; *Lavell v. Bullock,* 43 N. D. 135 (174 N. W. 764).

During the discussion in *In re Associated Oil Co.,* supra (289 Fed. 693), the Circuit Court of Appeals in the Sixth Circuit said:

"We first meet the question whether the trustee in bankruptcy has the right to enforce any such liability [the amount unpaid on corporation stock]. As this court decided in *Kiskadden v. Steinle,* 203 Fed. 375, 121 C. C. A. 559, and *Courtney v. Croxton,* 239 Fed. 247, 152 C. C. A. 235, and *Re National Co.* (C. C. A.), 272 Fed. 938, this question depends upon the statutes and decisions of the state of organization, and the test seems to be whether, under the state laws, such an action vests, on the one hand, in an assignee for the benefit of creditors or an equity receiver, or, on the other hand, accrues to specific credi-

tors. This in turn seems to depend upon whether such a liability is in a fair sense an asset of the corporation. If so, it passes to the receiver or assignee; otherwise, it does not.''

That being the rule, it is necessary now to determine whether, under the Iowa statute, as interpreted by our decisions, the money here sought by appellant is an asset of the bankrupt estate. Section 8380, above quoted, is the legislation which creates the liability here sought to be enforced by appellant. According to that statute, the director who knowingly consents to the corporation's creating an indebtedness beyond the statutory limit *''shall be personally and individually liable to the creditors of such corporation for such excess.''* When interpreting this legislative enactment, we decided, in *Platner v. Hughes,* 200 Iowa 1363, that the remedy must be enforced by an action in equity for and on behalf of all creditors entitled to relief. Such is the rule because that is the only method by which the liability of the consenting director can be determined, and each creditor protected. Concluding our discussion on page 1366 of the *Platner* case, we said:

''* * * the statutory liability thus created is deemed a constructive asset of the bankrupt corporation. As such, it becomes available for distribution, subject to any particular equity which may prevail in favor of any particular creditor. It might be an interesting query whether this remedy could have been pursued by the trustee in bankruptcy.''

Appellant bases his right to recover in the case at bar on the use of the term ''constructive asset'' in the quotation above. Those funds contemplated being a constructive asset, appellant concludes that, under the amendment to the Bankruptcy Statute, he has a right to obtain the money and execute the trust. Obviously, this court did not intend, by the quotation above set forth, to decide that the funds arising from the statutory liability constituted a constructive trust in bankruptcy. What was said in the discussion was more in the nature of a suggested inquiry than a final declaration. Hence the *Platner* case does not decide the point in issue. It is true that the action by creditors to enforce the statutory liability must be in equity, for the benefit of all those entitled to relief. Perhaps in such proceeding a trust fund would arise, but the proceeds thereby accumulated

would not amount to a trust in bankruptcy. Rather than so doing, the trust funds would be distributed through some suitable method in said equity suit wherein they were recovered. The statutory remedy is emphatically declared to be for the creditors alone. They only are named as beneficiaries.

There exists a very good reason why the creditors themselves, as distinguished from the corporation, should enforce this statutory remedy. If that liability exists, it is against the directors of the corporation. These officers control the management of the corporate business. Therefore, they would be loath to enforce the statutory debt against themselves. To obviate such embarrassment and the possible delay and disadvantage arising therefrom, the creditors themselves were empowered with authority and authorized to collect the obligation themselves.

Within the purview of that statute, for a reason sufficient to the legislature, the benefits bestowed are for the creditors named, rather than the corporation itself. No right or equity through that legislation accrued to the corporation. Nor is the corporation, under that law, constituted a trustee for the funds in question. Every advantage created by this statute is for the benefit of the creditors therein named. The money here sought to be recovered by appellant now is, and at all times was, the property of said creditors, as distinguished from the corporation. Title 11, Section 22, of the United States Code, Annotated, among other things, provides that:

"The bankruptcy of a corporation shall not release its officers, directors, or stockholders, as such, from any liability under the laws of a state or territory or of the United States."

Thereby it is apparent that the bankruptcy action in no way precludes the creditor from proceeding against the directors under the Iowa statute. The discharge in bankruptcy becomes quite immaterial, so far as the creditors' action is concerned. If, on the other hand, the money here sought to be recovered from the directors in fact is not an actual asset of the corporation, as heretofore found, but regardless thereof, the trustee in bankruptcy should be permitted to collect the same, then bankruptcy would affect the directors' liability to the creditors. There could not be two recoveries, and the creditors named in the

state statute cannot recover from the corporate officers if the trustee in bankruptcy already has done so, on the trust fund theory or through some other doctrine. A recovery, then, by such trustee would, contrary to Section 22 of the Federal statute aforesaid, discharge the corporate officers from liability to the creditors under the state statute. See *Tiger Shoe Mfg. Co.'s Trustee v. Shanklin,* 125 Ky. 715 (102 S. W. 295), and other cases supra. Consequently, because of all the discussion above and cases cited, the trustee in bankruptcy has nothing to do with the rights created by the foregoing state statute.

Clearly, then, the appellant, as trustee in bankruptcy, is not entitled to maintain this suit, and the district court properly sustained appellees' motion to dismiss.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, ALBERT, MORLING, WAGNER, and GRIMM, JJ., concur.