Wishard & Cole v. H. C. Hansen, Appellant, The Chicago Lumber Company, *et al.*, Interveners.

Unpaid Stock Liability: CORPORATIONS. Where the capital stock of a corporation is issued to the promoters for property taken at a gross over-valuation, the transaction is fraudulent, as to creditors, to the extent of the difference between the par value and the amount actually paid for the stock.

Same. In an action to enforce the liability of a stockholder of a corporation, it appeared that the consideration paid for the stock, when issued, did not exceed thirty-six per centum of its par value; that the indebtedness to plaintiff existed while the defendant was a stockholder; and that the corporation was insolvent. *Held,* that defendant could not escape his liability by transferring his holdings to an insolvent assignee.

Burden of Proof. It appeared, also, that defendant had purchased the stock from an original holder, and had subsequently transferred his holdings to a third person, who was insolvent; that the indebtedness to plaintiff existed while defendant was a stockholder; and that the corporation was insolvent *Held,* that the burden was on the defendant to show that he was an innocent purchaser, without notice of the inadequacy of the price originally paid upon the issue of the stock.

Transfer: *Purchase with notice.* The evidence also tended to show that, the defendant purchased the holding of one of the original stockholders, paying, as alleged, full value therefor. He testified, that his vendor told him at the time, that the stock was fully paid, and that he had relied on such representations. It appeared, however, that the certificates of stock recited that the stock was fully paid, *but was subject to assessment* for the principal and interest of a mortgage incumbrance on the lands and personal property of the company, the amount of which was forty thousand dollars. It

also appeared, that the defendant knew the value of the land and that it was the only property owned by the company, he knew that the value of the land, above incumbrance, was only about twenty thousand dollars, the capital stock of the company being two hundred thousand dollars    *Held*, that the facts justified a finding that defendant was chargeable with notice of the character of his stock, rendering him liable as a stockholder for the unpaid percentage thereon.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

SATURDAY, OCTOBER 17, 1896.

ACTION at law, commenced by Wishard & Cole, on a judgment rendered against the Zoological Park Company of Des Moines, Iowa, to recover of the defendant, H. C. Hansen, on account of stock of the company purchased by him, on which he is alleged to be liable as a stockholder, for unpaid stock.    Robert Fullerton, doing business as the Chicago Lumber Company, and B. P. White, intervened.    Each of the interveners holds an unpaid judgment against the Zoological Park Company, and seeks to recover thereon against Hansen, as a stockholder, and alleges, that the judgment upon which the action of the plaintiff was brought, has been fully paid.    While this action was pending in the district court, A. S. Wilcoxen was substituted for Wishard & Cole, as plaintiff.    Before the trial was concluded, the plaintiff dismissed his action, and the trial proceeded on the issues presented by the pleadings of the interveners and the defendant.    The trial was by the court, without a jury, and resulted in a judgment against the defendant, in favor of each intervener.    The defendant appeals.—*Affirmed.*

*McVey & Cheshire* for appellant.

*Berryhill & Henry* for appellee the Chicago Lumber Company.

*Dowell & Parrish* and *Earl & Prouty* for appellee B. P. White.

ROBINSON, J.—The Zoological Park Company was organized in the year of 1889. At about the time it was organized, L. M. Mann was the owner of a tract of sixty-three acres of land, situated in the city of Des Moines, and a syndicate was formed which had for its object the organizing of the park company, and the purchase of the land. A contract was entered into with Mann, under which he conveyed the land to the park company. The consideration for the conveyance was twenty thousand dollars in money and real estate, furnished by the syndicate, and forty thousand dollars in bonds, secured by a mortgage on the property, issued by the park company, to Mann. Shares of the capital stock of the company to the amount of one hundred and twenty thousand dollars were issued to the members of the syndicate, for which they paid nothing at the time, excepting twenty thousand dollars, furnished in money and real estate, as stated. Assessments to the amount of eighteen and three-fourths per cent. of the capital stock were afterwards made and paid. The payment of money and real estate made by the syndicate amounted to sixteen and two-thirds per cent. of the stock issued. It thus appears that less than thirty-six per cent. of the amount for which stock was issued has been paid, and that is true of the stock in controversy. We think the district court was authorized to find that to be the case, even though the land, subject to the mortgage of forty thousand dollars, and not the money and

real estate to the amount of twenty thousand dollars, be regarded as the consideration paid for the stock, for the reason that it might have been found, under the evidence, that the value of the tract in excess of the mortgage, was not more than twenty thousand dollars. The capital stock of the company was divided into shares of one hundred dollars each, and the one thousand two hundred to the syndicate and one hundred and twenty-six taken by the Des Moines Street Railway Company, were all that were issued. Thirty-four shares were apportioned to John J. Pederson, a member of the syndicate. He transferred them to the defendant, in October, 1890, and the certificates originally issued for them, were surrendered, and a new one was issued to the defendant. He testifies, that he paid for them, a claim he held against Pederson for three hundred and eighty-five dollars; seven hundred and sixty-five dollars in money, five thousand dollars in railway-supply stock, of a value not shown, but taken at twenty-five cents on the dollar, and in May, 1891, gave Pederson a check for one thousand nine dollars and nineteen cents. The defendant further testifies, that he transferred the shares to J. C. Hansen, on the seventeenth day of June, 1893, although the transfer was not recorded in the books of the company until the latter part of February, 1894. The judgment upon which the Chicago Lumber Company relies, appears to have been rendered for building material sold to the Park Company for use in improving its grounds. The judgment upon which B. P. White seeks to recover, was rendered on bonds which were issued to refund the bonds originally taken by Mann. The district court rendered judgment in favor of the interveners for sums which amounted to two thousand one hundred and seventy-four dollars and fifty-five cents, besides

costs, or for about sixty-four per cent. of the stock which the defendant had owned.

Section 1082 of the Code is a part of the chapter in regard to corporations for pecuniary profit, and is as follows: "Neither anything in this chapter contained, nor any provisions in the articles of incorporation, shall exempt the stockholders from individual liability to the amount of the unpaid installments on the stock owned by them, or transferred by them for the purpose of defrauding creditors, and execution against the company may, to that extent, be levied upon the private property of any such individual." Where the capital stock of a corporation is issued to one of its promoters and organizers for property which is taken at a gross over-valuation, the transaction is fraudulent as against creditors of the corporation if it be insolvent; and the stockholder who receives such stock with the knowledge of the consideration paid for it, will be liable to such creditors, on the stock he holds, for the difference between its par value and the amount actually paid to the corporation for it. And this is true, not only of the original stockholder, but of those who acquire the stock with knowledge of the facts. *Osgood v. King*, 42 Iowa, 478; *Jackson v. Traer*, 64 Iowa, 469 (20 N. W. Rep. 764); *Carbon Co. v. Mills*, 78 Iowa, 460 (43 N. W. Rep. 290); *Calumet Paper Co. v. Stotts Investment Co.*, 96 Iowa, 147 (64 N. W. Rep. 782). It is also true that the holder of such stock cannot escape liability by transferring it to an insolvent assignee. 2 Morawetz Priv. Corp. sections 858, 891. The district court was authorized to find from the evidence that the consideration paid for the stock in question, when issued, did not exceed one-sixth of its par value; that the entire amount thus far paid for it does not exceed thirty-six per cent. of its par value; that the indebtedness on which the judgments in favor of the interveners

were rendered, existed while the defendant held the stock; that the park company was then insolvent; and that the assignee of the defendant is also insolvent. Proof of these facts and of others to which we have referred, placed upon the defendant the burden of showing, if he could, that he was not liable on the claims of the interveners.

It is claimed that he purchased the stock in question without knowing that full payment for it had not been made, and that he should be treated as an innocent purchaser. He testifies that Pederson told him at the time of the transaction that the stock was paid in full, and that he believed that to be true, and had no intimation to the contrary. If he paid par value for it, that fact tends to corroborate his testimony. It is said, however, that facts within his knowledge, when he made the purchase, were of such a character as to charge him with notice that the stock was not paid up; and whether the district court was authorized to find that such was the case, is the next question we are required to determine. The certificate for the stock in question states that it was held "subject to the articles of incorporation of the company, and to the terms and conditions printed on the back hereof, which are hereby made a part of this certificate." On the back of the certificate was printed the following: "This stock is fully paid up, but may be assessed at such time and in such amounts as may be necessary to meet the several payments of principal and interest upon the mortgage incumbrance upon the lands and personal property owned by the company, as such payments become due; said mortgage incumbrance being for the sum of forty thousand dollars.  *  *  *  It may also be assessed for the purpose of improving said property, and for other necessary expenses of the company.  *  *  *"  The certificate also showed

that the capital stock of the company was two hundred thousand dollars. The defendant saw the form of the certificate before he made the purchase, and must be held to have known its contents. The language of the indorsement is peculiar, and well calculated to arrest attention. Although it stated that the stock was fully paid up, it provided for assessments. Those statements are conflicting on their face, for it is the general rule that the stockholder can be made liable only for so much of the par value of his stock as is unpaid. *Spense v. Construction Co.*, 36 Iowa, 409; 23 Am. & Eng. Enc. Law, 817; 1 Cook, Stocks & S., section 212 *et seq.;* 1 Morawetz Priv. Corp., section 131. If the stock was fully paid up, the power to make assessments upon it was dependent upon some authority not disclosed by the certificate. The evidence shows that the defendant had been on the land of the company before he purchased the stock, and, so far as it appears, he knew its value. The certificate informed him that it was mortgaged for an amount which was equal to two-thirds of that value. The only property owned by the company of which he had knowledge, was the incumbered land and some animals, and he supposed that they were the basis of the stock. It is not shown he believed the value of that property to be equal to the par value of the stock, nor to any considerable part of it. He did not make any inquiry in regard to the stock before he purchased it. Although he resided in Des Moines, and was engaged in business within eight or ten blocks of the office of the company, he made no effort to ascertain for what the stock was issued, nor by what authority it was assessable. It is the general rule that a person is chargeable with the knowledge of such facts as he would have ascertained had he acted upon the information he possessed with reasonable

care and prudence. *English v. Waples,* 13 Iowa, 57; 16 Am. & Eng. Enc. Law, 795; 3 Wait, Act. & Def. 448.

If the defendant paid for the stock in good faith the amount claimed, it may well be questioned whether he acted with the care which the law required for his own protection. Whether he was chargeable with knowledge of the fact that the stock was not fully paid up, was a question of fact, and we are of the opinion that the finding of the court, which is entitled to the weight of a verdict of a jury, has such support in the evidence that we should not disturb it. The judgment of the district court is therefore AFFIRMED.