CHARLES H. LAVELL, Trustee in Bankruptcy of Everybody's Store, a Corporation, Bankrupt, Plaintiff and Respondent, v. F. G. BULLOCK et al., Defendants, and F. G. BULLOCK, Appellant.

(174 N. W. 764.)

**Corporations — evidence as to balance due on stock.**

This is an appeal from a judgment under the statute which makes a stockholder liable for the unpaid balance due to the corporation on his corporate stock. As trustee in bankruptcy the plaintiff brings the action to recover from the appellant $700 and interest as the balance due on 14 shares of common stock in Everybody's Store. *Held:*

1. The evidence clearly shows that on such stock there never was any balance due to the company.

**Corporations — stock issued contrary to state Constitution — void.**

2. Stock issued as bonus stock in violation of § 138 of the Constitution, which prohibits corporations from issuing stock or bonds except for money, labor, or property received, is void.

**Corporations — liability of purchasers of stock illegally issued as to creditors.**

3. Purchasers of stock issued in violation of the constitutional prohibition are not, under the circumstances in the instant case, precluded from asserting the void character of the stock as against creditors of the corporation.

**Corporations — effect of § 4554, Compiled Laws 1913 — rights of creditors against bona fide purchasers of stock illegally issued as fully paid.**

4. Section 4554, Compiled Laws of 1913, which provides that each stockholder is liable individually for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him, is construed, and held to create no cause of action in favor of creditors as against a bona fide purchaser of stock originally issued as fully paid contrary to law.

Opinion filed August 2, 1919.

---

NOTE.—On effect of transfer of shares of stock on liability for unpaid subscription, see notes in 47 L.R.A. 246, and L.R.A.1918D, 1049.

On liability of transferee of corporate stock on unpaid subscriptions, see note in 30 L.R.A.(N.S.) 283.

On creditor's knowledge that stock is unpaid as affecting stockholders' liability, see note in 7 A.L.R. 972.

On liability of stockholders on subscription for stock, see note in 40 Am. Dec. 358.

On liability of stockholders to the creditors of an insolvent corporation for the amount due on their unpaid stock, see note in 35 L. ed. U. S. 227.

Appeal from judgment of the District Court of Cass County, *Cooley,* Special Judge.

Reversed and dismissed.

*Lawrence & Murphy,* for appellant.

The action is not one properly triable in a court of equity under the circumstances here presented, but should be in the form of an action at law in which this defendant has the right to have the facts determined by a jury. Comp. Laws 1913, § 7608; Kohler v. Agassiz (Cal.) 33 Pac. 741.

The ordinary action for the recovery of a call is an action at law. 4 Thomp. Corp. pp. 351, 352.

"The remedy to collect subscriptions was held not to be in equity, although the defense was interposed that the board of directors released the subscription, but the corporation claimed that such release was fraudulent." 4 Thomp. Corp. p 352.

The basis of this action is the purported call by the referee which is simply a demand for a debt due on contract, and therefore if the basis for an action at all is a basis for an action at law. Porter v. Northern F. & M. Ins. Co. The meaning of the word "call" or "instalment" strictly speaking means the action of the board of directors or of a corporation demanding the payment of all or a portion of unpaid subscriptions. 4 Thomp. Corp. § 3686.

"An action by a receiver to collect unpaid subscriptions is an action at law, and it is not proper practice to join all delinquent stockholders as defendants in one action." See also Johnston v. Allis, 71 Conn. 207, 41 Atl. 816.

"On the contrary the probability or even the possibility of a multiplicity of suits is negatived by the facts in the case, nor are any facts averred showing that the remedies provided by law are not entirely adequate." Bismarck Water Supply Co. v. Barnes, 153 N. W. 458.

"We venture to say that it would not be seriously suggested that a common interest in any such question of law, where the legal interests of the parties were wholly distinct, could constitute any ground of equitable jurisdiction, when the several controversies affected by the question were purely legal controversies. Suits do not become of

equitable cognizance because of their number merely." Youngblood v. Sexton, 20 Am. Rep. 657; Marshall-Wells Co. v. New Era Co. 13 N. D. 396.

The stockholders' liability is not conditional nor secondary under said section. It is a primary liability, and accrues as soon as the debt is contracted. It may be enforced as a personal liability by the procedure laid down in §§ 5767, 6770, Revised Code 1899. Comp. Laws 1913, §§ 7997, and following; Burke v. Schoer, 33 L.R.A.(N.S.) 1057, 130 N. W. 962.

Subscriptions to the stock of a corporation do not constitute trust funds for the benefit of its creditors, so as to give chancery jurisdiction of a suit to reach them for the creditors' benefit.

"Compelling creditors of a corporation to elect between a pending garnishment proceeding and suit in chancery to reach unpaid stock subscriptions will not confer jurisdiction on the chancery court if it did not otherwise exist." Hall v. Henderson, 63 L.R.A. 673; O'Bear Jewelry Co. v. Volfer, 28 L.R.A. 707.

"The general rule supported by a great number of cases is that the stockholders' statutory liability does not pass either to a receiver or to an assignee in insolvency, and cannot be enforced by either." Hammond v. Cline, 170 Ind. 453, 84 N. E. 827; Wallace v. Milligan, 110 Ind. 498, 11 N. W. 599; Runner v. Dwiggins, 147 Ind. 238, 36 L.R.A. 645, 46 N. E. 580. See also Lane v. Morris, 8 Ga. 468; Abbey v. Grimes Dry Goods Co. 44 Kan. 415, 24 Pac. 426; Howell v. First Nat. Bank, 52 Kan. 133, 34 Pac. 395; Hanson v. Konkersley, 37 Mich. 184; Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926, 16 Am. St. Rep. 671, 4 L.R.A. 745; Re People's Live Stock Ins. Co. 56 Minn. 180, 57 N. W. 468; Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 38 L.R.A. 415, 69 N. W. 331; Olson v. Cook, 57 Minn. 552, 58 N. W. 625; Palmer v. Bank, 65 Minn. 90, 67 N. W. 893; Liberty Female College Asso. v. Watkins, 70 Mo. 13; Hamilton Nat. Bank v. American Loan & T. Co. 66 Neb. 67, 92 N. W. 189; Wright v. McCormack, 17 Ohio St. 86; Umstad v. Buskirk, 17 Ohio St. 113; Cushing v. Perot, 175 Pa. 66, 34 Atl. 447, 52 Am. St. Rep. 835, 34 L.R.A. 737; Parker v. Carolina Sav. Bank, 53 S. C. 583, 31 S. W. 673, 69 Am. St. Rep. 888; Colton v. Mayer, 90 Md. 711, 45 Atl. 874, 78 Am. St. Rep. 456, 47 L.R.A. 617.

"It does not exist in favor of a subsequent creditor who has dealt with the corporation with full knowledge of the arrangement by which the bonus stock was issued, for a man cannot be defrauded by that which he knows when he acts." Hospes v. N. W. Manufacturing & Car Co. 15 L.R.A. 474.

"But the law implies such a promise only in favor of the subsequent creditors who are presumed to have extended credit to the corporation on the faith of the increased stock, and they alone are entitled to enforce their claims against those accepting that stock." Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. 735. See also Hadley v. Stutz, 139 U. S. 417–435, 34 L. ed. 706.

Where the plaintiff placed no reliance upon the supposed full-paid capital of a corporation, on an increase in the number of shares of its capital stock, it was held, in Coit v. North Carolina Gold Amalgamating Co. supra, that he would have no cause of complaint by reason of the subsequent recall of such shares. Easton Nat. Bank v. American Brick & Tile Co. (N. J.) 8 L.R.A.(N.S.) 271, 272; Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. 733.

"The fact that stock certificates cite that the stock is 'fully paid up and nonassessable' was held to be no protection to the assignee thereof as against corporate creditors where such assignee had notice that it was not in fact paid up, or where the circumstances are such that a person of average intelligence would know the facts in relation to the stock being paid up, but the rule does not apply to an innocent purchaser." 4 Thomp. Corp. 1327; Davies v. Ball, 116 Pac. 833; note in 38 L.R.A. 494.

*Fowler & Green* and *Pfeffer & Pfeffer,* for respondent.

"The stockholder is liable to the extent that the subscription represented by his stock requires him to contribute to the corporate funds, and when sued for the money he owes, it must be in a way to put what he pays, directly or indirectly, into the treasury of the corporation, for distribution according to law." Patterson v. Lynde, 106 U. S. 519, 27 L. ed. 265.

"Unpaid subscriptions on the capital stock of a corporation pass, like other assets, to the trustee in bankruptcy, and he is the only party that can bring an action or proceeding thereon." Sanger v. Upton, 91

U. S. 56, 23 L. ed. 220; Re Crystal Spring Bottling Co. (D. C.) 96 Fed. 945; Lane v. Nickerson, 99 Ill. 284.

"It is only through the instrumentality of the trustee, when the corporation has been adjudged a bankrupt, and the estate is in process of settlement in the bankrupt court, that the creditor can reach and subject such assets to the payment of his debt." Glenny v. Langdon, 98 U. S. 20, 25 L. ed. 43; Peery v. Carnes, 86 Mo. 652; Lane v. Nickerson, supra; Blair v. Hanna, 87 Ind. 298; Perkins v. Cowles, 157 Cal. 625, 30 L.R.A.(N.S.) 283, 108 Pac. 711.

"The amount due from the stockholders for the subscribed stock of the corporation is a trust fund for the creditors of the corporation, and such unpaid subscriptions to its stock are a part of its assets, and may be collected for its creditors." Vermont Marble Co. v. Declez Granite Co. 135 Cal. 579, 56 L.R.A. 728, 87 Am. St. Rep. 143, 67 Pac. 1057; Walter v. Merced Academy Asso. 126 Cal. 583, 59 Pac. 136; Visalia & T. R. Co. v. Hyde, 110 Cal. 632, 52 Am. St. Rep. 136, 43 Pac. 10.

"By purchasing from the original stockholders, the transferees assumed as a matter of law all the liabilities that the transferrers of the stock to them were under, and took it subject to all their obligations. Visalia & T. R. Co. v. Hyde, supra. Hence the defendants were liable to a call for payment of the unpaid subscriptions in the bankruptcy proceedings, and the trustee had a right to maintain this action to recover on the calls." Babbitt v. Read, 137 Fed. 712, 215 Fed. 395; Re Remington Automobile & Motor Co. 153 Fed. 345; Allen v. Grant (Ga.) 50 S. E. 494 (opinion by Judge Lamar); Re Bothe, 173 Fed. 597.

As to the necessity of an assessment, and as to the amount necessary to be assessed upon each share of stock, the finding of the referee is conclusive. To this extent the authorities are unanimous. Re Remington, 153 Fed. 345; Re Munger, 168 Fed. 910; Re Newfoundland Syndicate, 201 Fed. 917; Re Stipp Const. Co. 221 Fed. 372. (This is a late case approving procedure followed here.)

The equity jurisdiction should be sustained upon the ground that a multiplicity of suits thereby was avoided, if for no other reason. 1 Pom. Eq. 3d ed. chap. 269; Wyman v. Bowman, 127 Fed. 257; Patterson v. Lynde, 106 U. S. 519, 520, 27 L. ed. 265, 1 Sup. Ct. Rep. 432; Van Pelt v. Gardner, 54 Neb. 711, 75 N. W. 874.

Any shareholder who pays more than his proportion of the corporate debts may enforce contribution of his cosubscribers. Van Pelt v. Gardner, 54 Neb. 709, 75 N. W. 874; Dill v. Ebey, 27 Okla. 584, 46 L.R.A.(N.S.) 440, 112 Pac. 973.

"Each and every stockholder shall be personally liable to the creditors of the company to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise." Patterson v. Lynde, 106 U. S. 519, 27 L. ed. 265; Hayden v. Thompson, 71 Fed. 60; Kelley v. Fourth of July Min. Co. (Mont.) 42 L.R.A. 621; Allen v. Grant (Ga.) 50 S. E. 494; Van Cleve v. Berkley (Mo.) 42 L.R.A. 593; Bailey v. Tillinghast, 99 Fed. 801.

On proper rule as to equitable jurisdiction to avoid multiplicity of suits, see dissenting opinion of Judge Marshall of Wisconsin in Illinois Steel Co. v. Schroeder, 113 N. W. 51; N. Y. L. Ins. Co. v. Beard (D. C.) 80 Fed. 66; Cook v. Carpenter (Pa.) 1 L.R.A.(N.S.) 900.

"An arrangement by which the stock is nominally paid and the money immediately taken back as a loan to the stockholder is a device to change the debt from a stock loan to a loan, and is not a valid payment as against creditors of the corporation, though it may be good as between company and the stockholders." Sawyer v. Hoag, 17 Wall. 610, 21 L. ed. 731 (syllabus); Webster v. Upton, 91 U. S. 65, 23 L. ed. 384; Upton v. Tibilcock, 91 U. S. 45, 23 L. ed. 203; Hawkins v. Glenn, 131 U. S. 319, 33 L. ed. 189; Scovill v. Thayer, 105 U. S. 143, 26 L. ed. 968.

"A contract of a corporation limiting the liability of its stockholders to a portion of the par value of their stock is void both as to creditors and the assignee in bankruptcy." Edwards v. Schillinger (Ill.) 33 L.R.A.(N.S.) 895, 91 N. E. 1048.

"The experience and good will of the partnership which it is claimed were transferred to the corporation are of too unsubstantial and shadowy a nature to be capable of pecuniary estimation in this connection." Cambden v. Stuart, 144 U. S. 104, 36 L. ed. 363.

Doctrine reinforced by statute similar to ours in some respect. Easton Nat. Bank v. American Brick & Tile Co. (N. J.) 64 Atl. 917, 8 L.R.A.(N.S.) 271, opinion by Judge Pitney; Peninsular Sav. Bank v. Black Stove Polish Co. (Mich.) 63 N. W. 514 (services by way of "influence" consideration for stock, held not valid as to creditors; re-

views authorities) ; German Mercantile Co. v. Wanner, 25 N. D. 479, 142 N. W. 463.

The acceptance of a certificate of stock issued to the person who accepts it implies a promise that he will pay for the shares, and that thereby the party stands liable to pay assessments, although he has not yet made any express promise to do so.  10 Cyc. 381; Van Cleve v. Berkey (Mo.) 42 L.R.A. 593; Re M. Allemen Co. 172 Fed. 611; Vermont v. Declez (Cal.) 56 L.R.A. 728, 67 Pac. 1057; Elyton v. Birmingham (Ala.) 12 L.R.A. 307; Kelly v. Fourth of July Min. Co. (Mont.) 42 L.R.A. 621.

ROBINSON, J.  This is an appeal from a judgment under the statute which makes a stockholder liable for the unpaid balance due on his corporate stock.  As trustee in bankruptcy the plaintiff brings this action to recover from appellant $700 as the balance due on fourteen shares of common stock in "Everybody's Store."  The Constitution says that no corporation shall issue stock or bonds except for money, labor done, or money or property actually received.  § 138.  The statute says, "Each stockholder in a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him."  Comp. Laws 1913, § 4554.  In the consideration of this case it is not necessary to enter upon any debatable grounds or to discuss any nice points of law.  The purpose of the statute is to protect parties who deal with and trust corporations relying on obligations of stockholders to pay what they owe to their corporation.  Under the statute a stockholder is not merely a person who picks up and holds stock that he may find lying on the street.  He is a person who takes the stock under a contract to pay for it.  When the corporation has received its pay for stock it may be sold and transferred the same as any chattel or chose in action.  Neither a corporation nor its trustee or assignee can maintain an action for a balance due on stock unless there is a balance due the corporation.  In this case the proof does not show any balance due the corporation.  All the common stock was bought and paid for by the president of the company.  Then he traded some of it to Barney, who transferred to appellant fourteen shares of his common stock, which reads on its face that it is fully paid and nonassessable.  And it is stipulated that ap-

pellant paid full and fair value for this stock. He is a purchaser in good faith.

Here is the history of the case:—In October, 1913, at Fargo, one H. M. Cornell opened a trading house known as "Everybody's Store." At the end of three months he was in debt about $12,500 with assets of $25,000. Then he concluded to unload his debts and assets by turning himself into a trading corporation. Accordingly in the name of himself, his wife, and one E. C. Hamilton, he filed with the secretary of state articles of incorporation fixing the capital stock at $100,000. This included 500 shares of preferred stock at $100 a share, and 1,000 shares of common stock at $50 a share. The purpose of the corporation was to do a general trading business, to assume debts and liabilities, and to borrow money in unlimited amounts.

The company at once proceeded to assume the debts and obligations of Cornell and took over his business. The 1,000 shares of common stock it issued to Cornell in payment of his lease and the good will of his business; 250 shares of preferred stock it issued to Cornell in payment of all his assets. Cornell at once elected himself president and treasurer. To his good wife, who became a director, he gave 20 shares of common stock; to E. C. Hamilton, 125 shares; to one Flick of Minneapolis, 125 shares. On the books of the company—the journal and the ledger—it does appear on several pages that for the lease and good will of the business the company was charged $50,000. On the trial the books were put in evidence. Cornell was called as a witness for plaintiff and testified that he bought over the common stock in exchange for the lease and good will of the business. He says, "I gave for the common stock my lease and the good will of the business, the location and establishment of the business." (17.)

Q. "What were the 250 shares of common stock issued to Flick and Hamilton for?"

A. "That really belonged to me and I turned them off to them gratis. (17.) The 20 shares of stock issued to my wife I just gave her as a present."

Q. "What was the value of the good will and lease?"

A. "I figured it was worth what we sold it to the company for, $50,-000. I think we figured it at $50,000. We estimated it was worth that amount." (102.)

In a written contract on December 29, 1913, it is recited and agreed that Cornell sold to the company the good will of the business and the lease of the premises and property amounting to $25,000. That in consideration of such sale the company agreed to issue to the seller certain certificates of fully paid stock to the amount of $75,000, namely, 250 shares of preferred stock and 1,000 shares of common stock. In a subsequent written agreement of January 2, 1914, it is recited that the corporation has sold and delivered to Cornell 1,000 shares of common stock and he agrees to replace in the hands of the treasurer 250 shares of the common stock to be retained by the treasurer and allotted to purchasers of preferred treasury stock as an inducement to buy the preferred treasury stock. Doubtless the company assumed the great load of debts and paid too much for its whistle. But that was the purpose of its organization and this is not an action to rescind the contract of sale, and the mere inadequacy of the price does not make the contract void. As the record shows, Mr. Cornell purchased and paid for all the common stock, which reads on its face that it is fully paid and nonassessable. Then he transferred to one Barney 15 shares of stock and Barney transferred 14 of his shares to appellant. But on said 14 shares there is nothing due to the corporation. It never had any cause of action against the appellant. It had no dealings with him.

Suing as the representative of the corporation and its creditors of course the plaintiff can assume no rights only such as belong to the corporation and its creditors. Furthermore, the purpose of the statute is to protect parties who deal with and give credit to a corporation on the faith and credit of its stockholders, to the amount of their corporate stock. In this case it appears that after the incorporation the business taken over was conducted in the same name and in the same manner as before the incorporation. And there is no showing that the creditors in dealing with the corporation knew that it was a corporation or that it had any stockholders. Certainly there is nothing to show that they were in any way deceived in regard to the holders of the common stock. The records of the company were open to them, and those records were very brief. They clearly showed that Cornell had purchased and paid for all the common stock; and that on such stock no balance

was due to the company.  Hence the judgment must be reversed and the action dismissed, with costs.

BRONSON, J., concurs.

GRACE, J.  I concur in the result.

BIRDZELL, J., and HANLEY, Special Judge (concurring specially). The certificates of stock involved in this case were issued without consideration.  It was bonus stock for which no consideration was given, promised, or expected; it being stock that was used by the corporation as an inducement to purchasers to buy the preferred treasury stock. The Constitution of this state provides: "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increases or indebtedness shall be void."  Const. § 138.  The Code provides: ".  .  .  No corporation shall issue any certificate or stock under an agreement or with an understanding that full par value shall not be paid."  Comp. Laws 1913, § 4527.  Also, "No corporation shall issue stock or bonds except for money, labor done or property estimated at its true money value actually received for it."  Comp. Laws 1913, § 4528.  When the Constitution and laws passed in conformity thereto forbid corporations to issue stock except for labor done, services performed, or money or property actually received, and make all fictitious increases of stock void, such an issue of stock is fraudulent; and persons to whom it is issued, for which they do not pay or do not expect to pay anything, do not thereby become shareholders of the corporation in any sense.  4 Thomp. Corp. p. 154; Arkansas River Land, Town & Canal Co. v. Farmers' Loan & T. Co. 13 Colo. 587, 22 Pac. 954.  The instant case is not one in which stock was subscribed for any payment agreed upon and full payment not made, nor a case in which stock was issued for more than the value of the property, money, or labor turned over.  If such were the facts then a different proposition would be presented and the cases cited by the respondent would be in point.  However, since the question is fully argued, it will be later considered.  In this case, there is no subscription for the common stock, no agreement to pay, but the stock involved in this action was, as shown by the record, set aside by the corporation

to be "used as an inducement to purchasers to buy the preferred treasury stock of the company." It is bonus stock and clearly comes within the prohibition of the Constitution and the statutes above cited. The meaning and language of the constitutional provision is clear and unmistakable. If stock is issued "except for money, labor done, or money or property actually received," such issue is in direct violation of the Constitution and the statutes, and is *ipso facto* invalid. The object of the provision in the Constitution is to prevent reckless and unscrupulous speculators from fraudulently issuing and putting on the market stocks that do not and are not intended to represent money or property of any kind. Arkansas River Land, Town & Canal Co. v. Farmers' Loan & T. Co. supra. The Colorado court in that case cites with approval the language of the Wisconsin court in the case of Clarke v. Lincoln Lumber Co. 59 Wis. 655, 18 N. W. 492, to the effect that such constitutional and statutory provisions are clearly in the interest of public morals and tend to the protection of those dealing with corporations. Most of the corporations created under the laws of this state have no fund or capital which their creditors can reach except that derived from the issuance and sale of their stock; and, if this law be strictly followed, in every case corporations will not have credit upon the false pretense of having a large paid up capital when in fact only a small percentage of the par value of the stock issued has ever come into the treasury of the company. The law is undoubtedly a salutary one, and its violation is clearly an illegal act. In none of the cases cited by respondent's counsel do we find that the stock involved was strictly bonus stock, and the cases are not in point for that reason.

Counsel for respondent argue that the principle involved has a different application where the action is brought by creditors to impose their right, as distinguished from an action brought by stockholders, and argue that the cases cited by the appellant are shareholder, and not creditor, actions. It seems clear, however, that constitutional provisions prohibiting such issues of stock are as available to the stockholders in defense of a creditor's action as they are to a cause of action for stockholders against the corporation. And it is so expressly held in J. F. Lucey Co. v. McMullen, 178 Cal. 425, 173 Pac. 1000. Nor does this constitutional provision making such shares of the stock void leave creditors without a remedy. For, under the laws of this

43 N. D.—10.

state, officers of a corporation who issue stock in violation of the constitutional prohibition become liable to the creditors. Comp. Laws 1913, § 4528. It being clear that the shares of stock upon which this action is based were issued in violation of the Constitution and laws of this state, such shares are void, and, being void, no rights and no liabilities can be predicated thereon.

There is another conclusive reason why the present action cannot be maintained. The action is predicated upon the liability of a stockholder for the debts of the corporation as expressed in § 4554, Comp. Laws 1913. In so far as applicable to the present action that section provides that each stockholder is liable individually for the debts of the corporation "to the extent of the amount that is unpaid upon the stock held by him," and the liability is determined by the amount unpaid at the time the action is commenced, which liability is not released by a subsequent transfer of the stock. The respondent argues that under this statute every stockholder is liable for corporate debts to the extent of the difference between the par value and what was originally paid to the corporation for the stock. Or, in other words, that the amount unpaid upon the stock within this statute is the amount originally unpaid to the corporation. If this construction is correct it would follow that every purchaser of stock from a stockholder in a corporation, regardless of the price he pays for it, whether par, below par, or above par, is liable for the corporate debts, if as a matter of fact the corporation did not receive full value when the stock was originally issued, and this liability would attach even though the subsequent purchaser had no notice of the circumstances surrounding the original issuance of the stock. It would also follow that no one would be safe in purchasing corporate stock, no difference how prosperous the corporation, without examining the transaction in which the stock was originally issued. Furthermore, no one would be safe in accepting corporate stock as a gift without a similar examination. We are of the opinion that the statute does not mean what the respondent contends it means, and that a different meaning is apparent from the section itself. (And especially so when considered in connection with the other statutes concerning the transfer of shares of stock.)

It will be observed that the liability provided in the statute is determined at the time the action is commenced. The clear implication

from this provision is that one who was a stockholder prior to the commencement of the action, but who had ceased to be such before the action was brought, is not liable for corporate debts. So, the statute does not purport to give to corporate creditors the right to collect from intermediate holders of stock which was originally not fully paid. It thus recognizes negotiability to the extent of making the stock salable and transferable before action brought upon the assumption of nonliability for corporate debts. In the light of this recognition in the statute itself and of the well-settled law aside from statutes, what is the meaning of the expression "the amount that is unpaid upon the stock held by him?" It seems clear to us that it can mean but one thing, and that is the amount that a stockholder is owing to the corporation upon the stock which he holds.

Under fundamental principles of contract law, how does the stockholder become indebted to the corporation for stock? He becomes indebted to the corporation when he subscribes for the stock for the amount of his subscription, or, if he purchases from a stockholder stock for which the latter has not paid the corporation and he has knowledge of the fact, he is liable.

It will be noticed, however, that the statute in question says nothing concerning the liability of the original subscriber for the amount of his subscription, nor concerning the liability of an intermediate owner of the stock who purchased knowing of the unpaid subscription obligation and assuming it. These are liabilities which the corporation could clearly enforce. The first as the immediate party to the subscription contract, and the second as the beneficiary of a promise by the intermediate stockholder to pay the amount of the subscription. Such obligations are not discharged by a mere transfer of the stock. They rest upon well-established principles of contract law, and may be enforced by the corporation or made available to creditors. See §§ 4526 and 7998, Comp. Laws 1913. But where one buys in good faith relying upon the representation that the stock is fully paid for, and the certificate of stock bears the indorsement that the statute requires to be placed upon fully paid stock (Comp. Laws 1913, § 4527), there is not as to him anything unpaid upon the stock. Ann. Cas. 1914B, 748, 755; 6 Fletcher, Cyc. Corp. § 3771; 3 Thomp. Corp. § 3222; 1 Cook,

Stock & Stockholders, 3d ed. § 50; 7 R. C. L. § 389; Brant v. Ehlen, 59 Md. 1.

We find nothing in the statute which fairly indicates a legislative intention to depart from the well-settled rule, that a bona fide transferee of stock which has been sold to him as fully paid is not liable for any portion of the unpaid subscription or for any difference there may be between the par value and the amount received by the corporation at the time the stock was originally issued. A similar question has been presented to the courts of last resort in at least two states,—Illinois and Washington.

Section 8 of the Illinois Corporation Act, which was passed in 1872 and which has been in force ever since, provides, among other things, that "every stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him." And further provision is made for the joint liability of an assignor and assignee of stock "until the said stock be fully paid." The language of this statute concerning the stockholders' liability for debts is substantially the same as that contained in § 4554, Comp. Laws 1913. In several well-considered cases arising under this statute, the supreme court of Illinois has held that a good-faith purchaser of stock which was issued as fully paid is not liable to corporate creditors for any unpaid balance. Coleman v. Howe, 154 Ill. 458–471, 45 Am. St. Rep. 133, 39 N. E. 725; Sprague v. National Bank, 172 Ill. 149–167, 42 L.R.A. 606, 64 Am. St. Rep. 17, 50 N. E. 19; Higgins v. Illinois Trust & Sav. Bank, 193 Ill. 394–399, 61 N. E. 1024; Gillett v. Chicago Title & T. Co. 230 Ill. 373–411, 82 N. E. 891.

In the case of Higgins v. Illinois Trust & Sav. Bank, 193 Ill. 400, 42 L.R.A. 606, 64 Am. St. Rep. 17, 50 N. E. 19, the court refers specifically to the rule and to the statute, saying: "If, however, the stock has been issued as fully paid and the assignee has acquired the same in good faith, and without notice that it has not been fully paid, he is not liable to the creditors of the corporation for any unpaid balance due upon the stock. 3 Thomp. Corp. § 3222; Kellogg v. Stockwell, 75 Ill. 68; Thebus v. Smiley, 110 Ill. 316; Coleman v. Howe, 154 Ill. 458, 45 Am. St. Rep. 133, 39 N. E. 725; Sprague v. National Bank, 172 Ill. 149, 42 L.R.A. 606, 64 Am. St. Rep. 17, 50 N. E. 19; Webster v. Upton, 91 U. S. 65, 23 L. ed. 384. Nor is this rule changed

by § 8 of the Corporation Act, which only fixes the liability of assignors and assignees to the corporation, and *not between themselves.*" Thus, where the liability to the corporation depends upon the contract of parties other than the corporation, and where, by its express intendment, no such liability arises, the statute does not change the relation of the parties to the contract and impose an uncontemplated burden upon the purchaser. The rights of the corporation and of creditors to this extent remain derivative.

In Davies v. Ball, 64 Wash. 292, 116 Pac. 833, Ann. Cas. 1914B, 750, the rule of nonliability of a bona fide purchaser was adhered to and the decision was made in the light of the state Constitution, § 4, article 12, which provided that "each stockholder should be liable for the debts of the corporation to the amount of his unpaid stock." See also Wishard & Cole v. Hansen, 99 Iowa, 307, 61 Am. St. Rep. 238, 68 N. W. 691.

We are of the opinion that the expression in our statute, § 4554, "the amount that is unpaid upon the stock held by him," refers to the amount which a stockholder has rendered himself liable to pay to the corporation upon principles of contract or in conformity with public policy where he has notice of nonpayment, and that it does not impose a liability upon a bona fide purchaser which is entirely outside of his contract of purchase. If any other meaning had been intended it would seem that the statute would have rendered every intermediate holder of the stock liable until the capital were fully paid in.

In so far as the respondent's argument is based upon § 4527, Compiled Laws 1913, which renders officers issuing stock in violation of the provision requiring payment in money, property or services, liable to purchasers in good faith, we deem it founded upon a misconception of the statute. The argument is that there would be no occasion to provide for such officers being liable to purchasers of stock unless it were contemplated that good-faith purchasers might sustain damages by reason of being held liable to creditors. This assumption is unfounded. It is manifest that a good-faith purchaser of stock, taking it upon representation that it is fully paid for, may be damaged by reason of becoming a co-owner of the corporate assets which are represented to be, or to have been, equivalent to the par value of the stock, when as a matter of fact the corporation never had been the recipient

of assets to this measure. So, the damage a good-faith purchaser of stock might sustain would be the difference between the value of his interest in a corporation upon the assumption that it had received money, property or services equivalent to the par value of the stock issued and the value of his interest in the same corporation whose stock was actually issued without receiving such an equivalent. This is a damage that would be occasioned by the breach of a duty imposed upon the officers, and the statute makes them liable therefor. See Van Slochem v. Villard, 154 App. Div. 161, 138 N. Y. Supp. 852.

For the foregoing reasons we concur in the order of reversal.

Bronson, J., concurs.

CHRISTIANSON, Ch. J., being disqualified, did not participate, Honorable J. M. HANLEY, Judge Twelfth Judicial District, sitting in his stead.